(No. 33934.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SYLVESTER MOORE, Plaintiff in Error.

*Opinion filed September 25, 1956.*

SYLVESTER MOORE, *pro se.*

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case comes before us on writ of error brought by defendant, Sylvester Moore, to the criminal court of Cook County. By this writ he seeks to reverse judgment and sentence to the Illinois State Penitentiary for life on a habitual criminal count.

On May 11, 1955, the defendant was indicted on three counts. The first count charged Moore and Arthur Irvin with armed robbery of $65 from Robert Durand. The second count was a habitual criminal count which realleged the charge of armed robbery and further set forth that the same Sylvester Moore was indicted in Cook County on a charge of robbery by indictment No. 48705 in June, 1928, pleaded guilty, and was convicted and sentenced to "the Illinois State Reformatory at Pontiac." The indictment further charged that the same Sylvester Moore was again indicted in Cook County in August of 1942 on a charge of robbery and larceny of personal property of the value of $16.50, by indictment No. 42-1558; that he was tried and found guilty as charged, and of having been previously convicted of robbery, and was sentenced to imprisonment in the Illinois State Penitentiary for a term of

ten years. The third count of the indictment was the same as the first count, except that it failed to allege that the robbery was committed while defendant was armed.

On the trial, the State adduced evidence tending to show that Moore and Irvin had been drinking together on April 19, 1955. They got in Moore's car and drove for some time. Irvin then got out of the car and, with a pistol, robbed Robert Durand of $65 in cash. He returned to the car and split the proceeds with Moore.

At the close of the State's case, the State's Attorney and counsel for Moore entered into a stipulation, in the words of the record, "relative to the habitual count of the indictment." The stipulation first covered indictment No. 48705, and it was stipulated that if the clerk of the criminal court of Cook County were called as a witness, he would testify that the records of said court show that Moore had been indicted for robbery, pleaded guilty, and "that said Sylvester Moore was thereby sentenced to the penitentiary." It was stipulated that the clerk would further testify that said records show that "the said Grand Jury returned an indictment No. 42-1558, the indictment charging Sylvester Moore with robbery while armed with a pistol; and habitual criminal;" that he pleaded not guilty, was tried, "and convicted of larceny, value of property $16.00 and habitual criminal in manner and form as charged in the indictment. That on August 27, 1952, the said Sylvester Moore was sentenced to the Illinois State Penitentiary at Joliet, Illinois."

Even though the indictment made no reference to the following conviction, it was further stipulated that the clerk would testify that his records show that the grand jury returned an indictment No. 42-1559, the indictment charging Sylvester Moore with robbery while armed with a pistol; that the said Sylvester Moore was duly arraigned on August 10, 1942, and pleaded not guilty; that upon trial, Moore was convicted of robbery while armed with a

pistol in manner and form as charged in the indictment; that on August 27, 1942, the said Sylvester Moore was sentenced to the Illinois State Penitentiary at Joliet, Illinois.

Among the instructions given by the court was one which stated that the indictment charged "that the defendant, Sylvester Moore, has heretofore * * * been convicted of the crime of armed robbery and grand larceny * * *." The jury found the defendant guilty as charged, and further found that he had theretofore been convicted of armed robbery and grand larceny. Motions for new trial and in arrest of judgment were denied and the defendant sentenced, under the habitual count, to the Illinois State Penitentiary for life.

The defendant appears here *pro se,* and has filed a typewritten brief and argument consisting of 137 pages. His argument contains innumerable alleged errors and points, many of which are either immaterial or unintelligible to this court. We gather that his principal objections center around the habitual count of the indictment, the use of his past record in the State's Attorney's argument, and other prejudicial conduct of the State's Attorney.

Neither the Attorney General nor the State's Attorney of Cook County have appeared in response to this writ, and we are not afforded the benefit of brief or argument on behalf of the State. Because of the unprofessional nature of the defendant's brief and argument, the court has been required to carefully examine the entire record to determine if he was fairly tried and convicted.

We will first consider whether the evidence in the record sustains the verdict. It is undisputed that Moore and his codefendant Irvin were friends and had been drinking together in a tavern from 10 A.M. until early on the afternoon of April 19, 1955. At that time they left the tavern in Moore's car and drove about the city. Moore claims that they were attempting to find a woman with whom Irvin had formerly lived as husband and wife. Irvin

conceded that he wanted to see this woman, but the evidence is clear that the search was not only fruitless, but rather aimless. After driving for a period of time, Moore told Irvin that he was running out of gas, and had no money. It is further undisputed that about 2:30 P.M. Moore stopped the car next to a laundry truck, Irvin got out of the car and went into an entry way where he accosted the laundry truck driver with a pistol and robbed him of $65.

The stories of Moore and Irvin differ in several aspects material to this case. Moore denies any knowledge of Irvin's possession of the pistol until after the robbery. Irvin testified that he showed Moore the gun before the robbery. Moore testified that they had no purpose in going to the scene of the robbery except as an aimless search for Irvin's so-called "wife." Irvin testified that they went to the area of the robbery for the purpose of getting some money, spotted the laundry truck, drove around the block and stopped. Moore gives no explanation for stopping the car except that Irvin instructed him to do so. Although the testimony of Irvin was necessary to convict Moore as a principal, it is undisputed that Moore drove the car and split the proceeds of the robbery. We recognize that the testimony of an accomplice is to be received with suspicion and acted on with caution; however, a conviction may be sustained on such evidence, even if uncorroborated, if it is of such character as to convince the jury of the guilt of the accused beyond a reasonable doubt. (*People* v. *Niemoth,* 409 Ill. 111; *People* v. *Rudnicki,* 394 Ill. 351; *People* v. *Johnston,* 382 Ill. 233.) In the case before us, the testimony of Irvin is in most part corroborated by Moore himself, and the jury was properly cautioned as to the suspicion attached to the testimony of the accomplice. In such case we cannot say that the jury was unjustified in rejecting Moore's version of the robbery and accepting Irvin's.

Defendant Moore attacks the habitual count of the indictment. We gather from his brief that he objects to the charge that he had been previously convicted of robbery and sentenced to the Illinois State Reformatory at Pontiac. He is correct in asserting that such an allegation is not now sufficient to charge him as an habitual offender, as the reformatory at Pontiac is not a penitentiary under the present Habitual Criminal Act. (Ill. Rev. Stat. 1955, chap. 38, par. 602; *People* v. *Perkins,* 395 Ill. 553.) However, this charge may be treated as surplusage, because the habitual count further alleged a prior conviction of grand larceny and sentence to the penitentiary. This was duly proved by stipulation, and the jury so found. Such a finding required the maximum sentence of life imprisonment. We can find no merit in defendant's claim that the grand larceny indictment was void.

We turn next to the alleged misconduct of the State's Attorney in argument. We have reviewed the entire record and find the following arguments made by the State's Attorney to be the most questionable:

"As a matter of fact, Ladies and Gentlemen, after the State has rested, should there not be sufficient evidence to go to a jury it becomes the function of the judge to take the case away from the jury  *  *  *  so there must have been sufficient evidence  *  *  *  in this record to the effect that Moore also knew a robbery was going to occur."

"This fellow sitting here, Ladies and Gentlemen, has had much experience in crime—experience dating back to 1928. But he did not stop there. He is a gunman. 1942— and he is a gunman, sentenced to the penitentiary for the gunman jobs he has been pulling."

"But he is a fellow that goes out on robberies. He is a fellow who still, as I say after having been found out— as far as we know for sure in 1928 and 1942, has not been caught since 1942 until this time."

"Ladies and Gentlemen, it is this kind of a man whom you read about from time to time, who is at war with your community."

"When you get the opportunity to put this kind of a man away, Ladies and Gentlemen, persist in it because otherwise your law enforcement authorities are completely weak, for they cannot do a thing without your cooperation when the proper evidence is presented to you."

"He (the defendant) is hoping that someone of you will be so stupid as to believe his story and set him free— a man who has waged war on society since 1928, and always with a gun."

"Ladies and Gentlemen, I have tried thousands of cases in this building, and I never saw the likes of a man like that, a man who the State of Illinois has given three chances. Here he is back for a fourth one, and he is trying to hook Irvin."

"But, Ladies and Gentlemen, any man who—he is forty-nine now—from 1926 or '28, whatever it was, has waged war on each and every one of you, who has paid one debt to society, come back, and in 1942 waged war on you again—what do you want? Some other jury took pity on him, not only on an armed robbery, but on a larceny charge as well. Pity him? Pity him?"

"I say this: If you do not do it (find him guilty on the habitual criminal count) it is on each and every one of you. If you do not have that type of guts, then you should have said so from the start—that you do not have it.

"But you said that you would, and I am holding you to your word. If you do not and cannot, then you ought to walk down the streets with the likes of a man like that!

"Do you want him as a friend? Do you want him as a neighbor? If you do, take your gun with you."

The record before us shows that the defendant made no objection to the foregoing arguments on behalf of the State, and the general rule is that such assignments of

error will not be considered on appeal unless objections to the alleged prejudicial statements are made in the trial court, a ruling of the court obtained, and the record shows the objection and the ruling preserved. (*Gaddie* v. *Whittaker,* 344 Ill. 149; *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486.) However, if the argument of counsel is seriously prejudicial, a court should, of its own motion, stop the argument and direct the jury not to consider it. (*McWilliams* v. *Sentinel Publishing Co.* 339 Ill. App. 83.) As we recently held in *Belfield* v. *Coop,* 8 Ill.2d 293, at 313:

"If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon."

We feel that the nature of the argument in the present case comes within this rule, and we note that neither the State's Attorney nor the Attorney General appears here to defend it. Statements of counsel based upon the facts, or upon legitimate inferences therefrom, do not transcend the bounds of debate and are not to be discountenanced by the courts. It is proper for the prosecuting attorney to reflect unfavorably on the accused and to denounce his wickedness and even indulge in invective. (*People* v. *Stephens,* 6 Ill.2d 257; *People* v. *Spaulding,* 309 Ill. 292; *People* v. *Lloyd,* 304 Ill. 23.) The State's Attorney had the right to dwell on the evil results of crime and to urge fearless administration of the law. (*People* v. *Caylor,* 386 Ill. 501; *People* v. *Wood,* 318 Ill. 388.) Nevertheless, the argument here cannot be so excused. From the excerpts of the argument set forth we think it clear that the prosecuting attorneys went well beyond the record in characterizing defendant as "a gunman" who has waged

war on society continuously since 1928, "and always with a gun." These remarks, coupled with the personal views and impressions of counsel concerning the case were clearly incompetent and highly prejudicial. (*People* v. *Lettrich*, 413 Ill. 172; *People* v. *Dabney*, 315 Ill. 320.) We also condemn the unsupported reference to the pity other jurors had shown the accused, and the reference to the duty of the trial judge to take the case from the jury if there was not sufficient evidence to convict. The record shows that no motion for a directed verdict was made, and it was improper for the prosecuting attorney to attempt to infer by such comment that the judge would have directed a verdict for the defendant in this case if the evidence presented did not warrant the jury in finding him guilty. The argument was prejudicial and inflammatory, and we cannot say that the accused received a fair trial. The judgment of the trial court must accordingly be reversed and the cause remanded for a new trial.

*Reversed and remanded.*