The People of the State of Illinois, Defendant in Error, v. Quincy Snell, Plaintiff in Error.

Gen. No. 50,602.

First District, Fourth Division.

July 20, 1966.

Lee A. Boye, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph R. Gill, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CHARGES
 (1) Attempted robbery.
 (2) Aggravated battery.
 (3) Attempted murder.

DEFENSE AT TRIAL
 Alibi.

JUDGMENT
 After a jury trial, defendant was convicted on all counts and was given concurrent sentences of not less than three nor more than ten years for each crime.

POINTS RAISED ON APPEAL
 (1) Misconduct of the prosecuting attorney deprived defendant of a fair trial.
 (2) It was prejudicial error to permit a State's witness to testify where her name was not furnished to defendant on the indictment or on the list of witnesses.
 (3) Cross-examination of a State's witness was unduly restricted.

EVIDENCE
 **Testimony of State Witnesses**
 *Charles Estelle*
 He was a bus driver with the Chicago Transit Authority. On November 21, 1962, at about 1:30 a. m., defendant boarded his bus at 59th Street and Wentworth Avenue in Chicago. After some hesitation, defendant paid his fare and took a seat in the front part of the bus. About six passengers were on the bus at this time. He recalled seeing defendant on his bus on eight or nine prior occasions. The bus was driven along its route in a routine manner until leaving the stop at 32nd Street at 1:45 a. m. At this moment, while the bus was in motion, he found the defendant standing at his right elbow holding a knife in his left hand and asserting, "[t]his is a stickup." Estelle rolled out of his seat to

confront his assailant. The two men struggled until the bus came to an abrupt halt upon colliding with a lamppost. Estelle fell on his back at the impact while defendant stood over him stabbing at him with the knife. Continuing to defend himself, Estelle called to the other passengers on the bus to assist him, but the response was negative. A passenger pulled the emergency ball [sic] to open the rear door of the bus and there followed a mass exodus. Moments later, Estelle managed to elude the defendant and "broke for the rear door." He then ran to the front of the outside of the bus where he picked up a plank left on the street by a highway construction crew and took "one big swing" at the defendant. He missed the defendant, but the latter, apparently not wishing to continue the contest, left the scene and proceeded north on Wentworth Avenue. Estelle returned to his bus with wounds in the abdomen and leg. When the police arrived shortly thereafter, Estelle described to them the height and complexion of his assailant, and pointed out the direction in which he had run. Estelle was then taken by fire ambulance to the emergency room at the Michael Reese Hospital. While he was being examined, several police officers entered the room with defendant, whom Estelle identified as his assailant on the bus. This was the only time he was asked to identify the defendant prior to the trial. Estelle remained in the hospital five days for treatment.

*Police Officer Ronald Blomstrand*

In the early morning of November 21, 1962, he was proceeding in his squad car along the 3000 block on Wentworth Avenue when he was stopped by an unknown male Negro who directed him in pursuit of a short and stocky Negro. The latter went into a yard which was three or four feet below street level. The officer left his car and entered the yard where he found the defendant huddled along a wall, lying on the ground. Upon placing defendant under arrest, he was told by defendant that his name was Henry Johnson. Defendant was taken to

16

Michael Reese Hospital emergency room, where Estelle identified him as the man who had attempted to rob him and had stabbed him on the bus. Defendant fitted the description which Estelle had earlier given to the police.

### Testimony of Defendant

He denied his guilt. After drinking throughout the day on November 20, 1962, he took a short nap in the late afternoon and resumed drinking at about 6:30 p. m. Sometime before midnight, he purchased a pint of wine and walked along the alley at 30th Street periodically consuming the wine. At some point along the alley he came to a porch where he lay down, and the next thing he remembered was that an officer was kicking him. He was immediately arrested. He gave the fictitious name of Henry Johnson because he "thought it was one of those drunk and disorderly charges, and when I get picked up on a drunk and disorderly my name is Henry Johnson." He stated that he had not ridden a C.T.A. bus for almost three months including and prior to the occurrence date.

### Testimony of State Rebuttal Witnesses

*Marcelletta Smith*

(Over objection by defendant, she was permitted to testify as a rebuttal witness.) She was a passenger on the bus driven by Estelle in the early morning of November 21, 1962. Her testimony substantially corroborated that of Estelle, and she identified defendant as the assailant.

*Hercules Smith*

(He was also permitted to testify over defendant's objection.) He was a bus driver for the Chicago Transit Authority on the Wentworth Avenue route. He recalled that on November 15, 1962, the defendant had been a passenger on his bus.

OPINION

██ (1) Defendant first contends that he was denied a fair trial when the State's Attorney was per-

17

mitted to inject comments in his final argument before the jury which were not supported by evidence in the record. It has frequently been held that it can be prejudicial error for a prosecutor to make observations in his final argument for which there is no foundation in the evidence introduced at trial. People v. Beier, 29 Ill2d 511, 194 NE2d 280; People v. Morgan, 20 Ill2d 437, 170 NE2d 529; People v. Dukes, 12 Ill2d 334, 146 NE2d 14. Here the prosecutor stated:

> . . . he [Estelle] asked for a description of the man, they had brought the man right to him.
>
> Hercules Smith, because he dares to take the stand, is questioned as to his qualifications of driving a bus, nothing is asked of him as to how he recognized the man. So, it is really a short case, it is a question of identification of a man who just previously had held him up, it is a question of the police arriving in the nick of time and pursuing a running man who fits the description. The policeman told you he was chasing a short, stocky man, the man disappeared . . . .

Defendant argues that the foregoing statement constitutes an allegation that defendant had at some time "held up" Hercules Smith, an event which was not put in evidence at the trial. We cannot agree with this strained interpretation of the words of the State's Attorney. The State's Attorney, at this particular juncture of his closing argument, was weaving together all the separate threads of evidence and inferences based thereon submitted at the trial. The testimony of Hercules Smith was brief, the only point of it being to rebut defendant's claim that he had not ridden a bus in three months inclusive of the date of the occurrence. Accordingly, allusion to such testimony was brief; was separated from the ensuing argument by the words, "So, it is really a short case"; and was interjected on summation amidst

18

reference to testimony of Estelle and the arresting officer. We have no difficulty in concluding that the jury understood the State's Attorney's statement concerning a "holdup" to refer to Estelle as the victim and not Smith.

■■ Defendant also contends that the following remarks of the State's Attorney in his closing argument were so seriously prejudicial as to require a new trial: "Now ladies and gentlemen, the defense would have you believe that this is a happy-go-lucky drunk who happened to fall asleep in a yard several miles from his home. We cannot afford to be naive. This is a vicious individual, he is a robber, he is an armed robber who doesn't hesitate to attempt to take the life of his victim. The City is not a jungle." Aside from the fact that no timely objection was made to the above argument, we think that the language quoted was within the range of permissible argument since in essence its effect was merely to reflect unfavorably on the accused and to urge fearless administration of the law. People v. Wright, 27 Ill2d 497, 190 NE2d 287; People v. Moore, 9 Ill2d 224, 137 NE2d 246; People v. Caylor, 386 Ill 501, 54 NE2d 514. Defendant points to other alleged misconduct in the final argument of the State's Attorney, but, after a careful review of the record, we conclude that the controversial statements were supported by facts in the record, or inferences therefrom, and did not transcend the bounds of legitimate summation. People v. Woods, 26 Ill2d 557, 562, 188 NE2d 1.

Defendant further contends that it was reversible error for the State's Attorney to cross-examine him in regard to a prior conviction. The record shows that defendant was questioned as to whether he had ever been arrested for carrying a knife. Continuing, after defendant's negative reply, the State's Attorney said, "As a matter of fact, you spent six weeks in the House of Correction . . . ." Although defendant's objection, in-

terposed at this point, was overruled by the trial judge, the State's Attorney did not further pursue the line of questioning.

■ Generally, it is improper to cross-examine a defendant as to prior convictions. People v. Flynn, 8 Ill2d 116, 133 NE2d 257; People v. Kosearas, 408 Ill 179, 96 NE2d 539; People v. Halkens, 386 Ill 167, 53 NE2d 923. However, where a defendant has himself opened the door to the particular line of questioning on direct examination, he may not claim prejudice. People v. Nastasio, 30 Ill2d 51, 195 NE2d 1411; People v. Ficke, 343 Ill 367, 175 NE 543; People v. Yates, 339 Ill 421, 171 NE 557. We find the latter principle applicable in this case.

■ On direct examination (apparently for the purpose of emphasizing his claim that he had been drinking on the night of the bus incident) defendant testified that he had been arrested a number of times for drinking—more than three times and maybe more than ten. He then testified that he did not own and he did not carry a knife. On cross-examination defendant said that drinking was not the only thing for which he had been arrested. He further testified, without objection, that he did not carry a knife and had never carried a knife. It was at this point that the State's Attorney proceeded to ask him if he had been arrested for carrying a knife, which question also drew a denial from defendant, as recited above. We think that this line of questioning to probe further into these denials by defendant was well within the scope of proper cross-examination, under the circumstances.

■■ We are constrained, however, to frown upon the tactic of constructing a foundation for impeachment and then abandoning this objective immediately thereafter. As stated in People v. Sanders, 357 Ill 610, at 622, 192 NE 697: "The question was only proper as an impeachment question, and no effort was made to make the impeachment after laying the supposed foundation

20 .

therefor. In that situation the question should not have been asked. (People v. Fiorita, 339 Ill 78.) In view of the other evidence in the record, we would not, however, reverse the case by reason, alone, of the asking of this question." Our position, too, is that on the state of the record any error on this point was harmless. In addition, we are assured that the State's Attorney acted in good faith when he alluded to defendant's prior conviction for carrying a knife, since the record shows that the State proved up this prior conviction at the pre-sentence hearing on aggravation.*

(2) Defendant next contends that Marcelletta Smith should not have been permitted to testify because her name was neither endorsed on the indictment nor included in the list of witnesses furnished to defendant prior to trial. The testimony of this witness, which was offered in rebuttal to defendant's alibi testimony, corroborated bus driver Estelle's identification of defendant. She testified that she observed the entire occurrence. Defendant refers us to some minor discrepancies between Marcelletta Smith's testimony and that of Estelle, but we note that as to the identification of defendant, the two were perfectly in accord.

 Discretion reposes in the trial court to allow an unlisted witness to testify. People v. Kenzik, 22 Ill 2d 567, 177 NE2d 162; People v. Ford, 19 Ill2d 466, 168 NE2d 33; People v. Kemp, 396 Ill 578, 72 NE2d 855. Only when it appears that defendant has been surprised or prejudiced will the trial court's ruling be overturned, and the burden of establishing the unfairness is on defendant. People v. Quevreaux, 407 Ill 176, 95 NE2d 62; People v. Weisberg, 396 Ill 412, 71 NE2d 671. Defendant makes the argument that the witness'

---

* Indeed, the record shows that defendant was incarcerated for six months (not six weeks) in the County Jail for carrying a knife.

21

testimony should have been introduced in the prosecution's case in chief. But this argument overlooks the fact that Mrs. Smith's testimony was in direct rebuttal of defendant's alibi and was admissible for that purpose. People v. Leach, 398 Ill 515, 526, 76 NE2d 425. Her testimony added nothing to the essential proof adduced in the State's case in chief, and, if offered at that time, would have been merely cumulative. Nothing in the record indicates to us that the State withheld "important testimony at its command" until defendant had concluded his defense and then "open[ed] up its case anew." People v. Crump, 5 Ill2d 251, 266, 125 NE2d 615.

■ ■ Defendant theorizes that Mrs. Smith's testimony was critical to the State's case because of the alleged weakness of Estelle's identification testimony. Estelle identified defendant in a hospital emergency room while the latter was in custody of the police. It certainly is preferable to have a witness, independently, identify the guilty party from among a group of unknown persons. People v. Sanders, 357 Ill 610, 622, 192 NE 697. However, failure to follow this practice goes only to the weight of the evidence and is not necessary. People v. Boney, 28 Ill2d 505, 509, 192 NE2d 920; People v. Crenshaw, 15 Ill2d 458, 464, 155 NE2d 599; People v. Mikka, 7 Ill2d 454, 458, 459, 131 NE2d 79. Where, as here, the witness was present during the commission of the crime, had ample opportunity to observe his assailant, and was called upon to make the identification after a lapse of less than an hour from the time of the occurrence, his testimony, if otherwise credible, can be sufficient for conviction notwithstanding failure to employ an ideal identification procedure.

■ ■ As another ground for error in admitting the testimony of Marcelletta Smith, defendant points out that she had been present during the trial, in violation of an order excluding witnesses. The record shows an

22

extended debate between the Public Defender and the State's Attorney as to the length of time the witness had been a spectator in the courtroom prior to her being called to take the stand. The State's Attorney stated that he thought Mrs. Smith would testify immediately upon entering the courtroom, and that the recalling of defendant for further questions surprised him. In addition, the State's Attorney was specific in his assertion that the witness was present during the proceedings for only five to ten minutes, during which time the defendant testified only as to matters concerning his drinking and details which occurred subsequent to his arrest; that she heard no testimony as to the commission of the crime itself, which was the subject of her own testimony. It is well settled that it is within the sound discretion of the trial judge to permit a witness to testify in rebuttal even though such witness may have been present during part of the trial, despite a court order excluding witnesses. People v. Weast, 30 Ill2d 160, 195 NE2d 725; People v. Miller, 30 Ill2d 110, 195 NE2d 694; People v. Chennault, 24 Ill2d 185, 181 NE2d 74. In view of the foregoing circumstances, we find no abuse of discretion by the trial judge in permitting this witness to testify.

(3) Finally, defendant contends that cross-examination of Marcelletta Smith for the purpose of showing bias or prejudice was unduly restricted. With this we cannot agree. The record shows that the trial judge permitted the Public Defender to inquire fully into the possibility that the witness had a lawsuit pending against the C.T.A. growing out of the abrupt stopping of the bus at the time of the attempted robbery. The witness admitted filing a claim against the C.T.A., but she stated that it was rejected. She denied that she was involved in any litigation over the matter. The Public Defender then questioned the witness as to the nature and treatment of her injuries, and asked: "When did you contact

a lawyer on that claim?" This obviously dealt with a subject which had been fairly covered in the earlier cross-examination, and the trial judge did not commit error in sustaining an objection to the question.

DECISION

The judgment and sentence of the Circuit Court are affirmed.

Affirmed.

DRUCKER, P. J. and McCORMICK, J., concur.