**People of the State of Illinois, Plaintiff-Appellee, v. Edward Lee Sevastos, Defendant-Appellant.**

Gen. No. 69–60.

Second District.

November 24, 1969.

John T. Beynon, Public Defender, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, and Jack C. Tower and R. J. McFarland, Assistant State's Attorneys, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendant, Edward Lee Sevastos, has appealed from a judgment of conviction of the crime of attempted kidnapping, entered upon a jury verdict. Defendant was sentenced to the penitentiary for a term of 2 to 5 years.

The appeal raises the questions: whether the testimony was sufficient to convict; whether defendant was prejudiced by remarks made by a judge in the courtroom where part of the jury panel was present on the day prior to the trial; and whether it was error to permit the State to bring out the precise nature of defendant's prior felony conviction on cross-examination when he had admitted to a prior felony conviction without identifying the crime, on direct examination.

Defendant's argument that the proof is insufficient, more precisely is directed to a claim that the testimony of the complaining witness, allegedly uncorroborated, was insufficient to support the conviction in view of defendant's complete denial.

Mrs. Constance Morgan testified that on the evening of September 8th, 1968, she and her husband had taken clothes to the laundromat to be laundered. They returned to their apartment which was 3 or 4 blocks away where they visited with friends, Curtis Sowl and his wife. Later Mrs. Morgan returned to the laundromat to pick up her laundry and returned at about 9:45 or

10:00 p. m. in her car which she then parked on a street to the side of her apartment building. She took the laundry out of the car and was approximately halfway to the steps of her building when she saw a car pull up in back of her car. She testified that she saw a man get out of the car, whom she later identified as the defendant, that he grabbed her as she was walking toward the stairs and put his hand over her mouth, telling her to shut up or he would kill her; that he put one hand on her neck and she started screaming for her husband and then he was choking her and then she was on the ground. She said:

> ". . . he was sort of like dragging and just choking and by this time I knew I was by his car. I don't know how I got there."

She testified that defendant was trying to push her into his automobile and she was hanging onto the door and as she got halfway in the car she was hanging onto the steering wheel; that after he got her in he was choking her for awhile, and then she was on the passenger's side and the next thing she remembered was that her husband was there and was pulling her out. She testified that when she was placed in the car she was lying down on the front seat of the car and was screaming; that she had not seen her husband approaching the car; however, when her husband opened the door, she was sitting up on the passenger's side of the front seat. She said she was in the car approximately a minute or two. The complaining witness testified that Mr. Morgan tried to disconnect something under the hood of the car and he was beating on the top of the car roof with a piece of wood. Mrs. Morgan further testified she saw the car's license plate, but did not obtain the last digit; and that she received a cut and a scratch or bruise on her eye, a cut on her leg and scratches on her neck (photographs taken of the complaining witness on the

107

following day at the Rockford Police Department were introduced as Exhibits).

Edward Morgan testified that he was becoming worried since his wife had not returned from the laundromat. He had gone to the back door and had then started walking down the stairs, at which time he saw some of the clothes his wife had taken to the laundromat laying on the ground and saw that the clothes basket was tipped over with some clothes still in it. At that point he heard his wife screaming and proceeded down the stairs, but could not see anyone in either car until he opened the car door of the other vehicle and saw his wife and then pulled her from the car.

Defendant testified that he parked his car directly behind the complaining witness's car, rolled down the window on the passenger's side and called to her to come over. That she came over and entered the car and they were talking when the husband approached the car, and that this was the first time she screamed. He stated that he didn't see the basket of clothes upset, but that he saw her lay it down when she came into the car. He denied any threat to the complaining witness, or that he put his hands upon her in any way.

Curtis Sowl testified that he heard Morgan going down the back stairs and he went to the bedroom and looked out. He saw the defendant's car and someone behind the wheel. He saw the complaining witness in the car and saw the husband on the bottom of the stairs. He testified that the first time he heard any screams was when the husband opened the door and pulled his wife out of the car.

 The testimony of the complaining witness and that of the defendant are completely opposed. But even if it could be said that the complaining witness's version of the occurrence was uncorroborated, there was sufficient evidence to convict. The testimony of even one witness, if positive and credible, is sufficient to convict

in a criminal prosecution even though it is contradicted by the accused. The People v. Novotny, 41 Ill2d 401, 411, 244 NE2d 182 (1968). The jury is not bound to accept defendant's exculpatory statements as true in any event. The People v. Warren, 33 Ill2d 168, 174, 210 NE 2d 507 (1965). It has often been stated that the courts will not reverse a judgment of conviction unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt. The People v. Williams, 40 Ill2d 522, 526, 240 NE2d 645 (1968). We do not so find the evidence in this case.

■■ The problem here clearly was one of credibility. There was testimony of the husband of the complaining witness, as well as physical facts, which could have been found by the jury to corroborate the testimony of the complaining witness. That there was conflicting testimony and the possibility of conflicting inferences from the physical facts created issues of weight and credibility which were for the trier of fact. No injustice is apparent from our view of the record in the way the jury resolved the issues.

Defendant's claim that he was deprived of a fair trial because of remarks made in the presence of the jury panel, relates to events which occurred in another courtroom and before a judge other than the trial judge on a day prior to the trial.

At that time the entire unassigned jury panel was in the rear of the courtroom of the chief judge. Defendant appeared before that judge with his counsel and made a motion for a change of venue from the county and also for a change of judge. The court stated that he would grant the change of judge but not the change of venue, stating,

"You are entitled to a fair and impartial trial, but it's getting to the point where you are trying to

play cozy with the Court, and I am not going to permit it. You don't have to try the case before me. I will send it to some other Judge. But it gets sickening the way you fellows sit up in jail and try to impede the administration of justice, and I am here to see it is not impeded, and that's what I'm going to do."

The defendant then stated to the court that his main concern was to get the right to get his bond fixed so that he could "get out on bond and get enough money to help fight his case." The court then stated,

The Court: "We don't want you out on bond."

The Defendant: "This, I understand."

The Court: "Yes. You have been out on bond before. Isn't that correct?"

The Defendant: "That's correct, sir."

The Court: "And you have committed a crime while you were out on bond, didn't you?"

The Defendant: "No I didn't."

The State's Attorney then indicated that the instant charge was the only one for which he had been indicted.

We have before us both the transcript of the colloquy before the court on the day prior to the trial and the transcript of the voir dire examination. The State has pointed out, and the record confirms, that at the time the remarks were made, counsel for the defendant did not object to the remarks or indicate that he believed any prejudice had occurred, nor did he seek a continuance. Nor does the record of the voir dire examination indicate any objection to the panel, or a request for a continuance. There is no indication in the record as to the proximity of the jury to the place of the colloquy before the court on the day prior to trial, or as to the audibility of the remarks, nor does the record indicate

110

how many of the complete venire was present at that time.

The record of the voir dire examination does indicate that only a few of the jurors actually selected to hear the defendant's case had been present when the remarks were made on the previous day. Of the 12 jurors eventually selected for the defendant's trial, 7 jurors on voir dire indicated that they had not been present in the courtroom when these remarks were made. Another juror indicated that she was present but had not been paying attention to the judge's remarks, and said that she had not been prejudiced in any way against the defendant. Of the remaining 4 jurors, one was not asked whether he had been present in the courtroom when the remarks were made; 3 jurors who were selected were determined on voir dire to have been present when the remarks were made. However, none of them were asked if they had, in fact, heard the judge's remarks. They were questioned generally by the defense counsel and stated that they felt no prejudice whatsoever concerning the defendant as the result of any remark they might have heard the day before. While defense counsel argues, and the record confirms, that he used all of his peremptory challenges to excuse jurors who were in the courtroom the previous day, there is no indication that defense counsel asked for excuse of any juror for cause as a result of having heard the remarks.

In addition, the record reflects that at one point during the selection, the trial judge took the further precaution of questioning the potential jurors as to whether they had been influenced in any way regarding the defendant by remarks they might have heard the previous day, and no juror indicated that he had been influenced in any way. The court then admonished the jurors that they could decide the case only on the evidence they would hear during the trial.

111

■■ While we must condemn the practice of conducting hearings on motions in criminal cases in the presence of any part of a jury panel which may later be called to hear the trial of the case, we do not find prejudice to the defendant under the circumstances of this case. On this record the incident complained of did not deprive the defendant of a fair trial.

The final claim of error involves the direct examination and the cross-examination of the defendant. At the close of direct examination defendant's counsel inquired of the defendant whether he had been in trouble before. Defendant's affirmative answer was followed with a question "You pled guilty to the charge of a felony at one time?" The defendant answered that he did, and when asked whether he went to the penitentiary defendant answered that he "got 1 to 3," and got out of the penitentiary in June of 1967.

On cross-examination the prosecutor indicated that he would ask the defendant "what the crime was." Over defense counsel's objection the prosecutor was permitted to ask the question,

> "Was it the offense of attempted rape of a woman? Was that the offense you were convicted of?"

Defendant answered that he was charged with attempted rape and had pleaded guilty.

Defendant's counsel forthrightly states that the purpose of his questions to defendant on direct examination was to avoid the possibility of the State introducing proof of defendant's record of a prior conviction for an infamous crime, for purpose of impeachment. He argues that the purpose of the rule is to enable the jury to know of a prior conviction in order to test the credibility of a witness, and that when the defendant has admitted a conviction there is no further need for impeachment and the pursuing of the inquiry more precisely can only result in prejudice to the defendant's case.

112

And that this is true in a practical sense even though the jury was instructed that they were not allowed to use the prior conviction as proof of the crime for which the defendant was being tried.

██ ██ The People contend that the specific nature of the defendant's prior conviction is a relevant fact under the circumstances of this case, which should be presented to the jury for their consideration, going to the credibility of the defendant. The People concede that if the defendant had not testified to the prior conviction that there would have been no right to cross-examine on that question, but that the State would be required to introduce the record of conviction of an infamous crime or an authenticated copy for impeachment purposes. The defendant, however, cannot claim error or prejudice to the extent he has opened the door on direct examination. See The People v. Nastasio, 30 Ill2d 51, 58, 195 NE 2d 144 (1963). See also The People v. Bey, 42 Ill2d 139, 147, 148, 246 NE2d 287 (1969). The People contend that under the circumstances of this case the specific nature of the defendant's prior conviction is a relevant fact opened up to cross-examination by the defendant's statement on direct examination that he had committed a prior felony.

We have not found any authorities in this State directly in point, but the United States Court of Appeals for the 10th Circuit has recently ruled on a similar question.

In Martin v. United States, 404 F2d 640 (CCA 10th, 1968), the court stated on pages 642–643:

> "The question presented by Martin's appeal, is in fact, very narrow; i. e., what is the permissible scope of the prosecution's cross-examination into prior felony convictions of the accused, when the accused has testified in his own case in chief, and has admitted a previous felony conviction? This question involves two conflicting legal policies, i. e.,

113

the Fifth Amendment right against self-incrimination versus the testing by cross-examination of witnesses concerning details of testimony introduced during a trial.

"The underlying answer to this question has been settled by the Supreme Court. '(The) correct statement of the law (is) . . . that by her (the accused's) direct testimony she had opened herself to cross-examination on the matters relevantly raised by that testimony.' The narrower question deals with the limits of the Brown [1] holding as it applied to an accused's testimony about previous felony convictions.

"[1, 2] When Martin testified on direct examination and opened up the topic of his previous felony conviction, he assumed the risk that some of the details of that conviction would be 'matters relevantly raised,' and subject to elaboration by cross-examination. This court does not believe, however, that the prosecution may be given unlicensed latitude in cross-examining the accused about a prior felony for two reasons. First is the unnecessary and unwarranted delay in the trial and second is the policy against introducing extraneous and possibly prejudicial or inflammatory testimony concerning matters unrelated to the present trial. The proper rule was aptly stated in a recent Fourth Circuit opinion:

" 'We do not question the well-settled rule that a defendant who voluntarily offers himself as a witness and testifies in his own behalf subjects himself to legitimate and pertinent cross-

[1] Brown v. United States, 356 US 148, 157, 2 L Ed2d 589, 78 S Ct 622, 628 (1958).

examination to test his veracity and credibility. Cross-examination of an accused as to collateral matters should properly be limited to an effort to discredit him as a witness, and the limit is exceeded when the questions are not useful for that purpose and the necessary result, and perhaps the purpose, is merely to prejudice the jury against the defendant.' [2]

"[3] The questions which the prosecution should be permitted as a minimum right in the circumstances of this case are, what was the felony and when was it committed? These questions are within the ambit of 'matters relevantly raised by'—'direct testimony.' The prosecution's cross-examination did not exceed these limits in the instant case. Whether or not broader cross-examination is permissible is for the discretion of the trial judge." (Citations partially omitted.)

We are persuaded by this reasoning and conclude that the limited examination conducted below was relevant under the circumstances of this case and within permissible limits.

We, therefore, affirm the judgment below.

Affirmed.

MORAN, P. J. and DAVIS, J., concur.

[2] United States v. Pennix, 313 F2d 524, 528 (4th Cir 1963).