THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE BRIGGMAN, Defendant-Appellant.

(No. 59206;

First District (2nd Division)—July 23, 1974.

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court.

Defendant, Clarence Briggman, was charged with aggravated battery causing great bodily harm (Ill. Rev. Stat. 1971, ch. 38, par. 12—4(a)), aggravated battery using a deadly weapon (Ill. Rev. Stat. 1971, ch. 38, par. 12—4(b)(1)) and armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). After a jury trial he was found guilty on all three counts, and was sentenced to a term of 4 to 10 years on the count charging him with armed robbery. On appeal defendant contends that (1) the trial court erred in refusing the jury's request to hear a certain portion of the testimony; (2) the prosecutor committed reversible error by reference to defendant's prior illegal activity; (3) defendant's guilt on the armed robbery charge was not proven beyond a reasonable doubt; and (4) both aggravated battery convictions arose from the same conduct.

At trial the following evidence was adduced. The complaining witness, Larry Koenig, testified that on June 11, 1972, at approximately 1:25 A.M., he left his home at 5734 North Winthrop Avenue, Chicago, Illlinois, to purchase a newspaper. As he walked south on Winthrop toward the elevated station at Bryn Mawr Avenue, defendant demanded money and hit Koenig once with a piece of lead pipe. Defendant reached into Koenig's coat pocket and took approximately $12. Koenig was able to grab the pipe and a 7- or 8-minute struggle with defendant ensued. Defendant ran north and Koenig proceeded south on Winthrop to obtain aid. After Koenig had walked less than one block, defendant came up from behind and proceeded to hit Koenig 12 or 15 times in the face with a broomstick. This second struggle lasted 4 or 5 minutes, whereupon defendant fled again. The police arrived shortly thereafter, and Koenig described his assailant. As Koenig was being driven to the hospital in the squad car, he observed defendant standing on the northwest corner of Bryn Mawr and Winthrop, and identified him as his attacker. Defendant was arrested approximately ¾ of a block from the scene of the second assault.

Koenig further testified that, during the entire incident, he observed defendant three times. He first noticed defendant when defendant was 5 to 6 feet away and was walking toward him. During the first scuffle Koenig viewed defendant face-to-face for 7 or 8 minutes. The area was illuminated by lights from surrounding apartments and from a street light 12 to 15 feet away. During the second scuffle, Koenig again ob-

served defendant's face. At this time Koenig was bleeding slightly, but his vision was unimpaired. He described the assailant to the police as "short, moustache, tan corduroy jacket, blue shirt, blue jeans, and scuffed-up shoes." Defendant matched this description when he was identified by Koenig on Bryn Mawr.

On cross-examination Koenig testified that he wears glasses for reading. He recalled that there were very few persons on the street at the time of the incident, but lights in the apartments were on. Koenig stated that when he was struck he knew his nose was broken, but he was not in tremendous pain, and during the entire incident, he was not upset.

Chicago Police Officer David Sandlund testified that on June 11, 1972, at approximately 1:25 A.M., he responded to a radio call and proceeded to 5702 North Winthrop. He observed Larry Koenig standing in the street in a dazed condition, bleeding from his face and with bruises about his eyes. Koenig told him that he had been robbed and described the offender. Koenig was placed in the squad car to be transported to the hospital. While proceeding south on Winthrop, Koenig observed defendant and yelled "That's the man." When he was stopped and arrested, defendant was walking southbound and was at the northwest corner of Winthrop and Bryn Mawr. Defendant perfectly matched the description previously given by Koenig.

On cross-examination the officer testified that some apartment lights were on and that there were approximately 10 street lights on that block. No weapons were found on defendant's person; he had in his possession at the time of his arrest $3.73. The officers attempted to search the area, but neither the pipe nor the broomstick was found. The officer testified that "empty fields" in the area made a thorough search difficult. However, keys and loose change were discovered in the grass at the location of the initial attack.

It was stipulated by the parties that if Koenig's treating physician from Weiss Memorial Hospital were called to testify, he would state that in the early morning hours of June 11, 1972, he examined Larry Koenig and determined that he had suffered a fractured nasal bone and multiple lacerations of the face.

Defendant, Clarence Briggman, then testified that on the evening of June 10, 1972, he had been at Bryn Mawr Beach. He spent the evening walking on the beach and talking to persons whom he knew from seeing there. Defendant was unable to name any of the persons he was with that evening. At approximately midnight he left the beach to return to his home at 4826 North Winthrop. He walked to Bryn Mawr and then turned south onto Winthrop. At this point he was stopped by the police and arrested. Defendant stated that he stopped nowhere between the

time he left the beach at midnight and the time of his arrest. He also denied ever previously seeing Larry Koenig or ever striking or robbing him.

After the jury had been instructed in the law, one of the jurors asked the trial court if he could ask a question. The court responded:

> "No sir. You may return to the jury room. If there is a question and the foreman is elected you may write the question on a piece of paper and deliver it to the bailiff. If it pertains to the case I will consider it. You may not get an answer, you will get a response, but you may not get an answer."

During the deliberation of the jury, the trial court received a note from the jury which read:

> What direction was defendant walking when he was arrested by the policemen as testified to by the policeman.

The court instructed the bailiff to "tell the jury there is no answer to the question." The jury resumed deliberation and thereafter returned verdicts of guilty on all counts.

Two recent Illinois Supreme Court opinions, *People v. Queen*, 56 Ill.2d 560, 310 N.E.2d 166 and *People v. Pierce*, 56 Ill.2d 361, 308 N.E.2d 577, discuss the issue of a jury's request to review testimony. Both opinions adopt the view that it is within the discretion of the trial court to allow or refuse a jury's request to review testimony. The court in *Pierce* stated its reasons for adoption of this rule:

> "The trial court will have a full knowledge of the case. It will know the charges against the accused, the witnesses and their supporting or defeating testimony and other evidence which may have been presented. It will be in a position to assess the request and judge whether a review of testimony, considering the circumstances, will be helpful or hurtful to the jury's proper deliberations. This question of review, like so many others which appear in the course of trial, is best entrusted to the trial court's sound discretion." 56 Ill.2d 361, 364.

The court in *Queen* discussed a related issue and held that a statement by the court, in response to the jury's request to rehear testimony, that it could not consider such a request constituted error. A court's refusal to exercise discretion in the erroneous belief that it has no discretion as to the issue presented is error.

We have perused the record in the instant case, and we conclude that the trial court committed error in refusing the jury's request. We are of the opinion that this refusal, coupled with the fact that apparently neither defendant nor his attorney was present in the courtroom during

the communication with the jury, constitutes error which deprived defendant of his right to a fair trial.

As in other situations involving discretion of the trial court, a court of review will not disturb a decision within the trial court's discretion absent a showing of abuse. *People v. Pierce, supra.* The court in *Pierce* found no abuse inasmuch as:

> "A review of the testimony [requested by the jury] * * * discloses only testimony that is unequivocally incriminating and damaging to the defendant, who did not present any defense at trial. The jury had already reached two verdicts at the time of its request * * * and it is clear that the defendant's attorney acted protectively and in the defendant's interest in agreeing that the testimony * * * should not be reviewed for the jury. If it could be said on any ground that the trial court should not have refused the jury's request, any consequent error was a species of harmless error, error which favored the defendant and of which he cannot complain. [Citations omitted.]" 56 Ill.2d 361, 364.

Upon our reading of the record in the instant case we are convinced that this situation is not analogous to that in *Pierce.* Here the jury requested the policeman's testimony concerning the direction in which defendant was walking or facing at the time of his arrest. The questioning of the victim and of defendant at trial involved the route taken by the victim from his home to the elevated station at Bryn Mawr, the locations of the attacks and the route taken by defendant from Bryn Mawr Beach to his home. We cannot characterize the testimony requested by the jury as "insignificant" as does the State; rather we are convinced that a review of the requested testimony, considering the circumstances of this case, would have been crucial to the jury in its deliberation. This testimony was not "unequivocally incriminating" to defendant, as in *Pierce,* but, in fact, corroborated defendant's testimony regarding his arrest. Moreover, the court's ambiguous response to the jury may have unintentionally confused or misled the jury.

This error must be considered highly prejudicial when it is considered that neither defendant nor his attorney was present when this communication with the jury ensued. Apparently, the attorneys were granted leave by the court when the jury retired to deliberate, and were to be summoned to court when the verdicts were to be returned.

It is clear that an accused has an absolute right to be present at proceedings which involve his substantial rights. (*People v. Mallett,* 30 Ill.2d 136, 195 N.E.2d 687.) It has generally been held that the proper practice is to discuss the jury's request with defendant's counsel and the

prosecutor prior to responding to that request. (*People v. Harmon*, 104 Ill.App.2d 294, 244 N.E.2d 358; *People v. Longstreet*, 2 Ill.App.3d 556, 276 N.E.2d 825.) In *People v. Pierce, supra*, defendant's counsel was present during the communication with the jury, but defendant was not present. The court there held that:

> "considering that the refusal of the jury's request was in the defendant's favor * * *, we judge it cannot be said that substantial rights of the defendant were affected by the trial court's refusal. Even if it could be said that substantial rights were involved and the refusal was error, the error was benign and the defendant will not now be heard to remonstrate." 56 Ill.2d 361, 365.

Again, the situation in the case at bar is not analogous to that in *Pierce*. The court in *Pierce* recognized that in some instances concerning communication with the jury, substantial rights of an accused will be involved. Under the circumstances of this case, we are of the opinion that the communication with the jury as to vital testimony affected the substantial rights of defendant, and that defendant was denied his right to be present at such a proceeding. *People v. Harmon, supra*.

■■ The State relies on *People v. Pulley*, 11 Ill.App.3d 292, 297, 296 N.E.2d 373, wherein the court found that "while the record seems to suggest that defendant's attorney was present [during the communication with the jury], it clearly does not indicate that [defendant] was not present." Further, the court indicated that a request concerning testimony, unlike a request concerning instructions of law, and a refusal of that request, are not grounds for reversal, even if "defendant's attorney was not present." (11 Ill.App.3d 292, 297.) In the case at bar, we reiterate that the testimony sought by the jury was obviously pertinent to their deliberations. We do not rely on *Pulley*. We conclude that the court erred in refusing the jury's request to rehear a certain portion of the testimony, and that the court erred in communicating with the jury outside the presence of defendant and his counsel. These errors resulted in a denial of defendant's right to a fair trial.

■■ It is clear that errors involving an accused's constitutional rights will not require reversal where such errors are found to be harmless beyond a reasonable doubt. (*Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824.) Once errors of constitutional magnitude have been established, the burden shifts to the State to prove beyond a reasonable doubt that the errors did not contribute to an accused's conviction. (*People v. Bracey*, 51 Ill.2d 514, 283 N.E.2d 685.) Viewing all the evidence in the case at bar, we cannot say that the State has sustained its burden. Although defendant was arrested near the scene of the attacks only minutes after the attacks, the money taken from the victim was not

recovered and was not in defendant's possession, and the weapons wielded by the attacker were not found. In addition, the police officer testified that when he arrived at the scene, the victim was in a "dazed condition," and was bleeding from the face. We therefore are not convinced that the evidence of defendant's guilt was so overwhelming as to render the errors harmless beyond a reasonable doubt. Accordingly, we reverse defendant's convictions and remand the cause for a new trial.

In view of our disposition of this case, we deem it necessary only to comment upon defendant's second assignment of error: that he was unduly prejudiced by the prosecutor's reference in his closing argument to defendant's admission that on the night of the offenses "he had smoked some reefers." On cross-examination defendant was asked whether he had been drinking on the beach. Defendant admitted drinking wine, and also volunteered the information that he had been smoking "reefers." The following colloquy then ensued:

> Prosecutor: You smoke a reefer?
> Defendant: Yes.
> Prosecutor: That is what is commonly referred to as marijuana?
> Defendant: Yes.
> Defense Counsel: Objection.
> Court: Sustained.
> Prosecutor: And drinking wine?
> Defendant: Yes.

Near the conclusion of his closing argument the prosecutor made mention of defendant's volunteered statement:

> "Furthermore, he told you that he was drinking within that night, and that he had smoked some reefers. Could it be that he doesn't remember what he did that night? * * *"

Initially, we note that no objection was raised to the prosecutor's comment in his argument, and therefore any error may be deemed to have been waived. (*People v. Tolefree*, 14 Ill.App.3d 754, 303 N.E.2d 555.) However, this court may consider assignments of error as to seriously prejudicial arguments of counsel, even though no objection was made at trial. *People v. Moore*, 9 Ill.2d 224, 137 N.E.2d 246.

In any event, we are of the opinion that, under the circumstances, the prosecutor's comment was proper. It is well settled that it is proper for a prosecutor to pursue a line of questioning which is initiated by a defendant. (*People v. Bridgeforth*, 51 Ill. 52, 281 N.E.2d 617.) Here defendant testified on direct examination as to his activities at the beach. The prosecutor pursued this line of questioning and inquired if defendant had been drinking. Defendant then volunteered the information that he had been smoking "reefers." Once defendant volunteered such informa-

tion, he assumed the risk that his testimony would be subject to elaboration by cross-examination or comment in closing argument. See *People v. Sevastos*, 117 Ill.App.2d 104, 252 N.E.2d 745; *People v. Snell*, 74 Ill.App.2d 12, 219 N.E.2d 554. While defendant's volunteered statement may have been inadmissible if elicited by the prosecution, it is axiomatic that defendant cannot complain of testimony he volunteered. *People v. Musinski*, 22 Ill.2d 518, 177 N.E.2d 142; *People v. Kirkwood*, 17 Ill.2d 23, 160 N.E.2d 766; *People v. Pride*, 16 Ill.2d 82, 156 N.E.2d 551.

■■ Furthermore, we are of the opinion that the prosecutor's question concerning marijuana was merely an attempt to clarify defendant's volunteered statement, and was well within the scope of proper cross-examination. By a defendant's testimony, as any other witness', he opens himself to cross-examination on matters relevantly raised by that testimony. (*People v. Sevastos, supra;* see *People v. Snell, supra.*) We are of the opinion that the trial court improperly sustained defense counsel's general objection to the question. Therefore, defendant's testimony regarding his use of marijuana was properly in evidence, and was the proper subject of comment by the prosecutor in his closing argument.

In view of the foregoing, we need not consider defendant's remaining assignments of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LEIGHTON and DOWNING, JJ., concur.