(No. 36883.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY MALLETT, Plaintiff in Error.

*Opinion filed January 22, 1964.*

CHARLES E. HUSSEY II, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Stanley Mallett, was indicted by the grand jury of the criminal court of Cook County for two separate crimes of burglary. With the defendant's consent the indictments were consolidated for trial before the court without a jury. The defendant was found guilty on each indictment and sentenced to the penitentiary for concurrent terms of not less than 5 nor more than 20 years. We have issued a writ of error to review the judgments of conviction.

The defendant was charged with the burglary of the apartment of Classie Mae Jones and with the burglary of a currency exchange. The defendant contends that the evidence was insufficient to establish his guilt on either charge. Miss Jones testified that she was employed at a currency exchange. She locked up the currency exchange when she finished work on July 9, 1960, went home and left at about 9 o'clock to go to a club meeting. Before she left she put the keys to the currency exchange on a kitchen cabinet in her apartment. She returned home from the meeting at about 4 A.M. and stayed in her car in front of her apartment until it was daylight. She then entered her apartment and checked the back door to be sure it was locked. She went to bed and some time later was awakened by the defendant, who was holding her slip over her head. She jumped out of of bed and ran out of the room and noticed the defendant's trousers and shoes in the hall outside her bedroom. She ran to her neighbor's apartment and by the time the neighbor had answered the door the defendant had dressed and walked into the neighbor's apartment with her. When she called the police the defendant left. About 5 minutes later the police arrived at the neighbor's apartment and Miss Jones reported these events to the police and told them that $11 in currency was missing from her purse and that her slip had been stolen. The police left in search of the defendant and about 15 or 20 minutes later returned to Miss Jones's apartment with him. Miss Jones identified him and he was taken to the police station. While Miss Jones and the defendant were at the station another officer came in and reported that the door to the currency exchange where Miss Jones worked was open and the officer asked Miss Jones if she had her keys. She replied that she had left them at home. When she returned to the apartment she found the keys on a record player in the living room instead of in the kitchen where she had left them.

A police officer testified that he searched the defendant

and found $11 in currency and about $36 in change. He also searched the defendant's car and found $100 in dimes in packaged rolls, hidden under a raincoat and paper on the front seat. In the trunk of the car the officer found two money trays and a money bag. The officer also searched the apartment of one Patricia Burge, a friend of the defendant, and found $349 in coins in the apartment.

The owner of the currency exchange testified that about $666 had been taken from the exchange. He could not positively identify the money trays and bag which had been found in the defendant's car, but stated that they looked like the same type that he used. He did not know whether any bags or trays were missing from the exchange.

Patricia Burge testified that she was present when the police searched the defendant's car and confirmed that the officers found a bag under the raincoat in the front seat and another bag in the trunk. On cross-examination she testified that she was with the defendant when he was arrested and rode in the defendant's car with the defendant and an officer when they returned to Miss Jones's apartment. She noticed a raincoat on the front seat but did not see any wrappers or coins or hear any coins rattling. While the police were questioning the defendant at Miss Jones's apartment, she drove the car a few blocks down the street to her home. When she parked the car she put some of the defendant's shirts in the trunk but did not notice any money bags in the trunk at that time. She testified that she had given the police officers a statement about the money that was found in her apartment. The prosecutor furnished a copy of the statement to counsel for the defendant and there was no further testimony concerning the statement or the money found in Patricia Burge's apartment.

The defendant testified that on the evening of July 9 he worked at a filling station until about midnight and then went to Patricia Burge's apartment where he picked her up and took her to a drugstore where she worked. He returned

to. Patricia Burge's apartment with hamburgers for her children at about 12:30 and then went to a tavern where he stayed for about 2 hours. He then returned to Patricia Burge's apartment and went to sleep on the couch. He awakened at about 7:15 A.M. and left the apartment and drove to the drug store. As he passed Miss Jones's apartment he noticed a man coming down the stairs and stopped his car and went upstairs to investigate. The door to the Jones apartment was ajar and when he knocked it opened. He went into Miss Jones's bedroom and told her that her door was open and she jumped out of bed and ran into a neighbor's apartment. The defendant left and went to the drugstore to pick up Patricia Burge and as they left the drug store they were met by an officer. He told the officer that he had just talked to Miss Jones on the phone and had told her that he was coming back to her apartment to explain what he was doing there. He testified that his only purpose in going into the apartment was to see that Miss Jones had not been injured. He denied taking any money from the apartment and also denied entering the currency exchange and taking any money. He testified that he had about $47 in his possession at the time of his arrest but said that only $8 or $9 was in change and testified that he had received this money in tips at the service station. He testified that he owned a raincoat but did not have it in the car on the day in question. He denied having any rolls of dimes in the car and testified that the first time he had seen the money bag was on the day of the trial. In rebuttal it was stipulated that the defendant had previously been convicted on one count of rape and two counts of robbery and that he had been sentenced to a term of 10 years on the rape count and to sentences of not less than 2 nor more than 15 years on the robbery counts.

In our opinion the evidence was sufficient to establish the defendant's guilt on both indictments. It is undisputed that the defendant entered the Jones apartment. The defendant

attempted to explain his presence in the apartment by saying that he was investigating to see if Miss Jones was safe. The trial judge was not obligated to believe the defendant's explanation, and his presence in the apartment, coupled with the testimony of Miss Jones that her money and slip had been stolen, is sufficient to establish that the defendant was guilty of the crime of burglary. The testimony of the officers that $100 in wrapped coins was found in the defendant's car, together with a money bag and tray of a type similar to that used in the currency exchange, when considered with the testimony of the owner of the exchange that a burglary had occurred, raises an inference of guilt. (*People* v. *Reynolds,* 27 Ill.2d 523.) The defendant did not attempt to explain his possession of this property and merely denied that it had been found in his car.

The defendant's second contention is that he was denied his constitutional right to be personally present at all stages of his trial. The record shows that during the trial a recess was taken and the defendant left the courtroom at that time. After a short interval of time the trial resumed and the owner of the currency exchange testified that he was the president of the currency exchange corporation and that he and his wife were the sole stockholders of the corporation. He testified that on July 10 he discovered that the exchange had been burglarized and that about $666 had been taken. Defense counsel then remarked that the defendant was not present and the court directed that the defendant be returned to court. After the defendant returned, the court started to explain what had occurred during his absence. The prosecutor interrupted the court's remarks with the following question addressed to defense counsel: "Stipulate, counsel, that the testimony would be the same? The defendant is now present in court." Defense counsel replied, "Yes. We were proving the corporate entity while you were gone out", and the defendant replied, "Yes." A defendant in a criminal case has an absolute right to be per-

sonally present at all stages of his trial. (*People* v. *Nelson,* 18 Ill.2d 313.) This right may be waived by the defendant but the attorney for the defendant has no power to waive this right on behalf of the defendant. (*People* v. *Smith,* 6 Ill.2d 414.) The record shows conclusively that the defendant was not present during a portion of the testimony. The only question to be determined is whether he waived this right.

The State argues that the defendant's affirmative reply to his attorney's explanation of what had taken place during the defendant's absence establishes that the defendant knowingly waived his right to be present. We cannot agree. The only explanation offered by counsel was that "we were proving the corporate entity." While this statement was true, it was far from complete. In addition to proof of the corporate entity, the testimony which had been heard in the defendant's absence established the fact that a burglary had occurred at the currency exchange and that about $600 had been stolen. Waiver assumes knowledge (*cf. People* v. *Griffin,* 9 Ill.2d 164, 167) and it cannot be said that the defendant knowingly waived his right to be present unless he was fully advised as to the testimony which had been heard in his absence. The failure to inform the defendant that the *corpus delicti* had been proved while he was out of the court room precludes the application of the doctrine of waiver. Because of the error in hearing testimony on a fundamental part of the State's case in the defendant's absence, the judgments of conviction must be reversed.

The judgments of the criminal court of Cook County are reversed and the causes remanded for new trials.

*Reversed and remanded.*