No. 3--94-0308

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,   )    Appeal from the Circuit

                                   )    Court of the 12th 

          Plaintiff-Appellee,      )    Circuit, Will County,

                                   )    Illinois

                                   )

          v.                       )    No. 89-CF-665

                                   )

DAVID STARKS,                      )    Honorable                

                                   )    Rodney Lechwar 

          Defendant-Appellant.     )    Judge, Presiding

_________________________________________________________________

                                    OPINION

________________________________________________________________

     In July 1989, defendant, inmate David Starks, along with

inmates Salvatore Giancana and William Cabrera, were charged by

indictment with two Counts of first degree murder (720 ILCS 5/9-

1(a)(West 1992)) for the death of a Stateville prison guard,

Lawrence A. Kush, Jr. (the victim).  A Will County jury convicted

defendant of both Counts.  The jury directed the court not to

impose the death penalty, and the court sentenced defendant to a

term of natural life imprisonment.

     On appeal, defendant raises numerous issues that can be

generally described as errors concerning: shackling, jury

selection, admission and publication to the jury of autopsy

photos, improper prosecutorial remarks during closing argument,

and whether he was denied his right to a fair trial by an

impartial jury.  For the following reasons, we affirm.

     Prior to trial, defense counsel requested that the court

allow defendant's legs to be unshackled during trial.  Although

the court denied this request, it took steps to insure that the

jury would not see defendant shackled, and it permitted defendant

to be present without handcuffs.

     During voir dire, certain venire members were examined

outside of defendant's presence.  Defendant did not object to

this questioning.  However, defense counsel moved for a mistrial,

citing Batson v. Kentucky, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S.

Ct. 1712 (1986), and arguing that the People had exercised

certain peremptory challenges for discriminatory purposes.  The

court found that the People's reasons for excluding the venire

members were non-discriminatory and denied the motion.

     At trial, testimony was heard by the People's witnesses and

over defense counsel's objection, the court admitted and

published to the jury, autopsy photos of the victim.  Following

the People's case-in-chief, the defense rested without presenting

any evidence.

     Closing arguments were heard, and following deliberations,

the jury convicted defendant of both Counts.  The jury directed

the court not to impose the death penalty and defendant was

sentenced to a term of natural life imprisonment.  The court

denied defendant's post-trial motion and defendant appeals.

                                I. SHACKLING

     The issue of shackling is one that rests within the sound

discretion of the court, and absent an abuse of that discretion,

a court's decision will not be overturned on appeal.   People v.

Boose, 66 Ill. 2d 261 (1977).  A defendant may be shackled when

there is reason to believe that he may attempt to escape, or he

poses a threat to the safety of the courtroom, or to maintain

order during trial.  Boose, 66 Ill. 2d at 266.

     In this matter, the court based its denial of defendant's

request to remove his shackles on the following permissible

factors: (1) the charge against defendant was serious; (2)

shackles were necessary to prevent flight; (3) defendant's prior

record was indicative of other acts of violence, i. e. at trial

he was serving a sentence for a 1987 conviction of attempt

murder, aggravated battery, and armed robbery; (4) there existed

a potential for mob action or revenge from the victim's family;

and (5) the layout of the courthouse presented security problems

of "monstrous proportions."  See Boose, 66 Ill. 2d at 266-67.

     Evidence in the record supports the court's decision, and it

is apparent from the record that the court balanced defendant's

right to a fair trial against permissible factors favoring

shackling him.  We therefore find that the court did not abuse

its discretion in requiring defendant to remain shackled.

                        II. PEREMPTORY CHALLENGES.

     Defendant next contends that he was denied a fair trial due

to the People's violation of Batson v. Kentucky, 476 U.S. 79, 90

L. Ed. 2d 69, 106 S. Ct. 1712 (1986).  The "command of Batson is

to eliminate, not merely to minimize, *** discrimination in jury

selection."  U. S. v. David, 803 F.2d 1567, 1571 (1986). 

     Defendant asserts that during voir dire, the People

peremptorily challenged an African-American, Samuel Abdullah

(Abdullah), and an Asian-American, Yong Gibson (Gibson), for pre-

textual reasons that were not race-neutral.

     A "trial court's determination on the ultimate issue of

discrimination is a finding of fact which turns on an evaluation

of credibility, and therefore is entitled to great deference on

appeal [citation] and will not be reversed unless it is clearly

erroneous."  People v. Hudson, 157 Ill. 2d 401, 426 (1993).

     In assessing an explanation, the focus of the court's

inquiry is on the facial validity of the explanation, and absent

an inherent discriminatory intent in the explanation, the reason

offered is deemed neutral.  Hernandez v. New York, 500 U.S. 352,

360, 114 L. Ed. 2d 395, 406, 111 S. Ct. 1859, 1866 (1991).  The

explanation is not required to be plausible or persuasive, and a

"'legitimate reason' is not a reason that makes sense, but a

reason that does not deny equal protection."  People v. Munson,

171 Ill. 2d 158, 175 (1996), citing Purkett v. Elem, 514 U.S.  , 

, 131 L. Ed. 2d 834, 840, 115 S. Ct. 1769, 1771 (1995).

     Courts are only required to accept one of the explanations

advanced by the People concerning each venire member.  People v.

Britt, 265 Ill. App. 3d 129, 134 (1995), citing People v.

Andrews, 155 Ill. 2d 286, 294.  Here, each of the People's

explanations are devoid of any reference to the individual's

race, each contain an acceptable basis that legitimizes the use

of the peremptory challenge, and a person may be peremptorily

challenged on the basis of courtroom conduct or demeanor.  See

Munson, 171 Ill. 2d at 178.  The People noticed that when asked

about the death penalty, Abdullah's mannerism displayed

hesitation, i. e. he clutched his hand and broke eye contact for

the first time.  Also, the People believed that it would have

bothered Gibson to deal with the death penalty.  Further, the

People observed that Gibson was quiet and did not appear to be a

strong juror, i. e. the People questioned whether she would

effectively participate in deliberations.

     The record indicates that defense counsel did not state that

the People's mannerism and demeanor concerns did not exist, he

only stated that he did not witness them.  As the trial court is

in a superior position to determine the credibility of the

People, and it determined that their stated explanations were

non-discriminatory, we are unable to say that the trial court's

decision was clearly erroneous.

      III. RIGHT TO BE PRESENT AND TO BE TRIED BY AN IMPARTIAL JURY.

     This court in People v. Bennett, 282 Ill. App. 3d 975, 980

(3d Dist. 1996) clearly stated that a defendant's exclusion from

voir dire is an impairment of the right to be present, and is

presumed prejudicial.  It should be noted, however, that the

defendant in Bennett objected.  In this case, defendant neither

objected to the court's questioning of jurors outside of his

presence, nor did he file a post-trial motion containing such

objection.  Therefore, defendant has waived this issue pursuant

to People v. Enoch, 122 Ill. 2d 176 (1988).  However, following

People v. Bean, 137 Ill. 2d 65, 80 (1990), this court may

consider the issue under a plain error standard of review

pursuant to Supreme Court Rule 615(a)(134 Ill. 2d R. 615(a)). 

Plain error occurs when a defendant is deprived of a substantial

right, or when an error is made in a case where the evidence is

closely balanced.  Bean, 137 Ill. 2d at 80.  

     The evidence in this case is not closely balanced. 

Defendant neither questioned the sufficiency of the People's

evidence, nor did he present a defense.  In Bean, 137 Ill. 2d at

80, because the evidence was not closely balanced, the Court

stated that only if defendant was deprived of a substantial

right, i. e. a constitutional right, could it find that his

absence from part of voir dire was plain error.

     Defendant has the right to appear and defend himself in

person at all stages of trial, including jury selection.  Ill.

Const. 1970, art. I, section 8; U.S. Const. amend. XIV.  However,

the Illinois Supreme Court and the U. S. Supreme Court have

limited the situations where the denial of the right to be

present is a constitutional violation.

     Under Illinois Constitutional law, defendant's right to be

present is not absolute.  Defendant is guaranteed the right to be

present at any stage of a criminal proceeding that is critical to

its outcome if his presence would contribute to the fairness of

the procedure.  People v. Jones, 185 Ill. App. 3d 208, 214

(1989), citing Kentucky v. Stincer, 482 U.S. 730, 745, 96 L. Ed.

2d 631, 647, 107 S. Ct. 2658, 2667 (1987).  Jury selection is a

critical stage of trial.  Bean, 137 Ill. 2d 65 at 84.

      The federal right of criminal defendants to be present at

trial is not an absolute constitutional right, but arises from

the due process clause of the 14th amendment.  Stincer, 482 U.S.

at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667;  United States

v. Gagnon, 470 U.S. 522, 526, 84 L. Ed. 2d 486, 490, 105 S. Ct.

1482, 1484 (1985);  Snyder v. Massachusetts, 291 U.S. 97, 105-06,

78 L. Ed. 674, 678, 54 S. Ct. 330, 332 (1934).

     A defendant's due process right of presence under the U. S.

Constitution is violated only when his absence results in his

being denied a fair and just trial.  Snyder, 291 U.S. at 107-08,

78 L. Ed. at 679, 54 S. Ct. at 333.

     Since the instant defendant was not present during a portion

of voir dire, the fairness of his trial centers upon the

impartiality of his jury.  Like the Illinois Constitution, the U.

S. Constitution guarantees defendant an impartial jury, as

opposed to a jury of choice.  People v. Henderson, 142 Ill. 2d

258, 291-92 (1990).  Therefore, the issue becomes whether

defendant's absence from individual voir dire sessions resulted

in an unfair trial because it caused him to be tried and

convicted by a jury prejudiced against him.

     Defendant disputes the fairness of his trial due to the

questioning outside of his presence of two jurors, John Greenwald

(Greenwald) and Brian Smith (Smith), and he questions the

impartiality of his jury because both served on the jury that

convicted him.

     Although defendant voiced no objections, there is no

indication in the record that he waived his right to be present. 

Further, defense counsel has no power on defendant's behalf to

waive this right.  Hopt v. Utah, 110 U.S. 574, 4 S. Ct. 202, 28

L. Ed. 262 (1884); People v. Mallett, 30 Ill. 2d 136 (1964).

     The record reveals the following concerning the voir dire

that occurred out of defendant's presence.  In regard to

Greenwald, after he had been impaneled he sent a note to the

court that resulted in him being questioned outside of

defendant's presence.  During this questioning, Greenwald was

asked whether being selected as a juror, and forced to miss a

business trip his company had mandated him to take, would affect

his ability to pay attention or to be fair and impartial.  He

replied, "No."  When he indicated that he was uncertain what his

company would do if he missed the trip, he was asked if that

would "cause [him] any concern *** while *** deliberating or

listening ***," and he responded, "No, I don't think so."

     In regard to Smith, while in defendant's presence he

revealed that his brother was the victim of a pending attempt

murder case.  Smith was asked if there was anything about that

case that would cause him a problem in being fair and impartial

in this matter, and he stated "No."  When asked to describe the

situation surrounding his brother's incident, Smith asked to

speak in private because he did not want to jeopardize his

brother's case.

     While outside of defendant's presence, Smith noted the

circumstances surrounding his brother's shooting, i. e. location,

injury, etc.  The court again asked him if his brother's pending

case would cause him problems with being fair and impartial to

either side in this case, and he responded, "No."

     Defendant contends that had he been present to witness

Greenwald and Smith's responses to the court's questions, one or

both of them could have been peremptorily challenged and

excluded.  This contention was successfully raised by the

defendant in Bennett, however, Bennett is distinguishable from

the instant matter.

     In Bennett, defendant was excluded by the court from 17

individual voir dire sessions involving 16 of 29 potential

jurors, five of whom served on the jury that convicted him. 

Initially, defendant was present when the court questioned jurors

in a hallway, however, the court ordered him back into the

courtroom for security reasons, and its erroneous belief that

defendant was not entitled to be present.  In Bennett, we held

that defendant was denied his right to be present and his right

to an impartial jury, however, because that defendant had

preserved his issue for appeal, such finding was reached under a

harmless error standard of review, i. e. requiring a showing

beyond a reasonable doubt that the error did not contribute to

defendant's conviction.

     Unlike the defendant in Bennett, the instant defendant was

excluded from the questioning of jurors outside of the courtroom

due to his shackles.  Further, the record shows that defendant

had the opportunity to assess both jurors' ability to serve prior

to their removal from the courtroom.  At the time Greenwald was

questioned outside of defendant's presence, he had been tendered

to and accepted as a juror.  After this additional questioning,

the court allowed the parties to back strike and exercise a 

peremptory challenge against Greenwald.  Further, defendant was

aware that Smith's brother had been the victim of an attempt

murder case prior to the questioning of Smith outside of his

presence.  The record also indicates that the court granted

defense counsel's requests "to go over all these jurors with

[defendant]."  Therefore, it appears that defendant was afforded

the opportunity to strike both jurors after their questioning

outside of his presence.

     Although we strongly condemn the practice of conducting voir

dire outside of a defendant's presence, in this situation we find

that defendant failed to prove that such questioning resulted in

the impaneling of a prejudiced jury under Illinois or U.S.

Constitutional law.  Thus, no plain error occurred.

                            IV. AUTOPSY PHOTOS.

     The admission of photos of a murder victim is within the

sound discretion of the trial judge, whose decision will not be

reversed absent an abuse of that discretion.  People v. Brown,

172 Ill. 2d 1 (1996).

     We note that autopsy photos of a crime victim are not

necessarily cumulative merely because there is also oral

testimony describing what the photos depict.  People v. Hefley,

109 Ill. App. 3d 74 (1982).  Further, autopsy photos may be

admissible to aid the jurors' understanding of expert testimony. 

People v. Lucas, 132 Ill. 2d 399 (1989).

     The autopsy photos of the present case illustrated the

testimony of forensic pathologist, Dr. Larry Blum, concerning the

location of the victim's injuries, the force used, and the cause

of death.  Regardless of the fact that defendant did not dispute

the cause of death or the force used, the People may still prove

every element and relevant fact of the offense charged, and if

autopsy photos are relevant to establish any such fact, they are

admissible despite their gruesome nature.  See People v. Bounds,

171 Ill. 2d 1, 46-47 (1995).

     In its ruling, the court stated that the autopsy photos were

material on the issues of cause of death and force used to

inflict injuries.  The court also found that because the photos

depicted an autopsy that was "clinically done" and "very neat,"

it did not "see that these [autopsy photos] would be unduly

prejudicial."  The court was careful to weigh the probative value

of the autopsy photos against any potential prejudice to

defendant, and we find that the court did not abuse its

discretion in admitting and publishing them to the jury.

           V. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS.

     Not only are the People prohibited during closing arguments

from making comments not based upon, or misstating, the evidence

(People v. Linscott, 142 Ill. 2d 22 (1991)), they are also

prohibited from making comments that disparage the integrity of

defense counsel.  People v. Lyles, 106 Ill. 2d 373 (1985).

     During closing argument, the People told the jury that they

would hear "certain things brought up by the Defense *** [that]

are either based on speculation rather than the evidence in this

case or are puffs of smoke or smoke screens without any fire." 

Defense counsel objected and the court instructed the jury that

the "last comment of counsel for the State is withdrawn."

     Although in People v. Emerson, 97 Ill. 2d 487 (1983), our

supreme court found the People's reference to a "smoke screen"

during closing argument improper, we find that case

distinguishable.  In Emerson, unlike this case, the People made

additional disparaging comments when they went on to describe the

smoke screen as "composed of lies and misrepresentations and

innuendos *** [stating] all defense attorneys try to 'dirty up

the victim.'"  The People's comment in this case does not rise to

the level of disparaging the integrity of the defense as found in

Emerson.  In light of this fact, and considering the court

instructed the jury that the comment was withdrawn, we find that

defendant was not prejudiced by the People's remark.

     During rebuttal closing arguments, the People commented that

had DNA testing been performed on the blood found on defendant's

shoes, "DNA *** would have told us that it was [the victim's]

blood."  Defense counsel objected, arguing that the People's

comments were not based on the evidence.  However, in defense

counsel's closing argument, he also commented on DNA testing,

stating that "[t]here could have been enough blood sample here to

run a DNA test *** [and] [i]t would have probably told us a lot. 

It could have excluded that blood as being [the victim's] blood."

     Considering defendant may not claim error when the People's

remarks have been invited and provoked by defense counsel (People

v. Dixon, 91 Ill. 2d 346 (1982)), and in light of the curative

instruction by the court, i. e. that what lawyers say during

closing arguments are not evidence and any comments not based on

evidence must be disregarded, we find that defendant was not

prejudiced by the remark, and was not denied a fair trial.

                                CONCLUSION

     Based on the foregoing, we find that defendant was not

denied his right to a fair trial by an impartial jury, and we

affirm his conviction on both Counts.

     Affirmed.

     MICHELA, J., with LYTTON, P.J., and HOMER, J. concurring.