2019 IL App (1st) 160501-B
No. 1-16-0501
Opinion filed July 9, 2019

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 MC5 0024401 |
| | ) | |
| NANCY LUCAS, | ) | Honorable |
| | ) | Matthew J. Carmody, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Presiding Justice Lavin dissented, with opinion.

**OPINION**

¶ 1    Defendant Nancy Lucas contends that the trial court violated her right to due process when, during the bench trial, it viewed a video of her traffic stop outside her presence. We initially affirmed defendant's conviction but, following full briefing on defendant's petition for rehearing, we allowed the petition for rehearing and withdrew our opinion.

¶ 2    We cannot say Lucas meaningfully waived her right to be present. While informed by the trial court that the video would be viewed in chambers without her being present, nothing in the

record indicates that the court or defense counsel informed Lucas that she had a right to be present. Accordingly, we reverse and remand for a new trial.

¶ 3                                    Background

¶ 4    Lucas was convicted of misdemeanor battery, misdemeanor resisting a peace officer, operating an unsafe vehicle, driving under the influence of alcohol (DUI), and negligent driving in Cook County circuit court. She was sentenced to 24 months' conditional discharge.

¶ 5    Before presenting witnesses, the parties stipulated to the authenticity of the video of Lucas's traffic stop captured by Oak Lawn police Sergeant Edward Clancy's squad car. The State then sought to publish the video for the court. The court explained the courtroom procedure.

"THE COURT: [Defendant], what that means is the parties, your attorney and the State's attorney, have stipulated that there was a video taken by the squad car on this matter. That is evidence that the State has every right to introduce and that your attorney has the right to view, and that evidence will then be viewed by me because they are stipulating to it. We do not have video in this courtroom. What we do in this courtroom is I go back with your attorney and the State's attorney only. I view the video. There will be no questions asked because neither of the officers will be present. It is simply me watching the video. Neither of the attorneys can comment to me nor will I inquire of them. That will be done only in this courtroom on the record. All I do is watch the video. Do you understand that?

[LUCAS]: Yes.

THE COURT: And we will do that first.

[ASSISTANT STATE'S ATTORNEY (ASA)]: Yes, Judge.

THE COURT: The court will be in recess. The court will now watch the video.

- 2 -

[DEFENSE COUNSEL]: If I may, I also explained that to you, correct? And I also explained what Judge Carmody just told you about the video. I explained all of that to you.

[LUCAS]: Yes."

¶ 6    The trial court paused the proceedings to watch the video in chambers in the presence of defense counsel and the ASA. Later, the trial court admitted into evidence the squad car video, which is contained in the record and has audio.

¶ 7    Following arguments, the court found Lucas guilty of battery to Officer Haron, resisting arrest, unsafe driving, DUI, and negligent driving. In so finding, the court explicitly stated it relied on the video and Clancy's testimony. The court noted that the video showed Lucas's driving was "disturbing" and that she was "belligerent" and admitted to drinking alcohol. The court further mentioned that Lucas's "general behavior" and Clancy's observations about Lucas all indicated that she was under the influence of alcohol.

¶ 8    The court later denied Lucas's motion for a new trial and sentenced her to 24 months' conditional discharge.

¶ 9                                    Analysis

¶ 10    On appeal, Lucas contends that she was denied due process by not being present at a critical stage of her proceeding—when, during the bench trial, the court viewed the squad car video of the traffic stop in chambers. Lucas argues that the video was key evidence against her and the court relied on it in finding her guilty. Had she been present, Lucas asserts, she would have been able to "sift the testimony" against her and aid in her defense. Lucas acknowledges she did not preserve this issue but argues that it is reviewable under the second prong of the plain error doctrine.

¶ 11    The State responds that Lucas affirmatively waived this issue by acquiescing to the trial court viewing the video in chambers after the court explained the parties' stipulation and the courtroom procedure. The State also argues that defense counsel stipulated to the authenticity of the video and that the viewing was not a critical stage of the proceedings because the court was merely viewing the video and did not inquire of anyone about it. Thus, according to the State, Lucas's presence would have been "useless," and any alleged error from her absence would be harmless. The State further points out that Lucas does not contend on appeal that the video should not have been admitted.

¶ 12    Generally, the United States and Illinois Constitutions afford criminal defendants the right to be present at all critical stages of the proceedings, from arraignment to sentencing. *People v. Stroud*, 208 Ill. 2d 398, 404 (2004) (citing *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002)); U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 8. But this right is not absolute. *Lindsey*, 201 Ill. 2d at 56. Rather, " 'a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome *if [her] presence would contribute to the fairness of the procedure*.' (Emphasis added.)" *Id.* at 57 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

¶ 13    Whether a defendant's absence affects the trial's fairness depends on an assessment of the whole record; analysis "turn[s] on the nature of the hearing from which the defendant ha[s] been excluded." *People v. Lofton*, 194 Ill. 2d 40, 68 (2000). This presents a question of law that we review *de novo*. See *People v. O'Quinn*, 339 Ill. App. 3d 347, 358 (2003).

¶ 14    We find Lucas's absence from the video viewing affected the trial's fairness because she was unable to view the evidence against her and aid in her own defense. Although the court informed Lucas that it would be viewing the video in chambers without her presence, neither the

court nor defense counsel informed her that she had a right to be present during the presentation of the video evidence. She was merely informed she would not be present. Waiver is "an intentional relinquishment or abandonment of a *known* right or privilege." (Emphasis added and internal quotation marks omitted.) *People v. Campbell*, 208 Ill. 2d 203, 211 (2003). More importantly, a defendant's attorney "has no power to waive [a client's] right to be present." *Lofton*, 194 Ill. 2d at 66. Thus, we cannot say Lucas meaningfully waived her right to be present.

¶ 15    Moreover, the United States Supreme Court has explained, "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment" and "a defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (*per curiam*) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 108 (1934)). The presentation of evidence at trial is undoubtedly a critical stage of the proceeding, and here, the video of the traffic stop involved a significant portion of the evidence against Lucas. Indeed, the court relied on the video in finding Lucas guilty. Despite the significance of the evidence presented and the proceeding itself, Lucas was not afforded the opportunity to confront the evidence against her and aid in her defense.

¶ 16    The only case the dissent relies on is *Lindsey*, which is easily distinguishable. There, the defendant was only absent from his arraignment in a literal, physical sense. Though he was not in the courtroom, he was able to participate in the proceedings through closed circuit audio-visual transmission. *Lindsey*, 201 Ill. 2d at 58. He could hear and see the proceedings, and the judge and counsel could hear and see him. *Id.* Even though the defendant was not in the courtroom when his counsel waived formal reading of the charges, the record affirmatively showed that he "had already

received a copy of the information at a preliminary hearing and had consulted with counsel prior to arraignment." *Id.* But Lucas could not hear or see the proceedings in the judge's chambers, and no evidence, let alone affirmative evidence, indicates that she viewed the video before trial.

¶ 17    Also in *Lindsey*, there was no possibility that the defendant's underlying constitutional rights could have been affected. *Id.* at 59. There was no confrontation to thwart because the defendant was absent only for arraignment and his jury waiver. *Id.* at 59-60. As Lucas points out in her petition for rehearing, our original order did not account for our supreme court's decision in *Stroud*. There, the court found that *Lindsey* was good law for the purposes of arraignment and jury waiver proceedings but held that it did not apply to plea proceedings. See *Stroud*, 208 Ill. 2d at 406. The court's distinction turns on "[t]he number and gravity of the rights at stake at a guilty plea hearing." *Id.* We find Lucas's exclusion from chambers much more like *Stroud* than *Lindsey*. Guilty pleas " 'direct[ly] result [in] defendant's conviction,' " and presence in the courtroom provides " 'an important element in the constitutional conception of trial.' " *Id.* at 406-07 (quoting *People v. Guttendorf*, 309 Ill. App. 3d 1044, 1046-47 (2000)). If that much is true for a guilty plea, it must be at least equally true for the evidentiary portion of a trial.

¶ 18    On this score, Lucas submits that our original opinion improperly relied on *People v. Young*, 2013 IL App (4th) 120228, ¶¶ 21-25. There the defendant was excluded from the video viewing for the purposes of establishing its admissibility at trial, not from viewing its actual offer as substantive evidence. *Id.* Critically, the defendant's inability to view the video at the evidentiary hearing "would not have contributed to his opportunity to defend himself against the charges." *Id.* ¶ 24.

¶ 19    The effect here differs markedly. As Lucas explains, her absence from the video viewing impacts at least one fundamental right—to testify in her own defense. Lucas's right to testify in her own defense belonged exclusively to her; counsel could do no more than offer strategic advice about whether testifying would be wise. *E.g.*, *People v. Griffith*, 158 Ill. 2d 476, 493 (1994) (enumerating litigation decisions belonging to defendant). As a matter of routine practice, defendants do not make their decisions about whether they wish to testify until after the State has presented its evidence and rested. *E.g.*, *People v. Magallanes*, 409 Ill. App. 3d 720, 724 (2011). This is the moment when the defendant is best informed to decide on testifying. Perhaps the State's case appears so facially insufficient that it will fail on its own, so testifying would be too great a risk, or perhaps the State's case appears facially plausible, and the defendant will want to provide his or her own version of events to rebut it. Either way, to make that determination the defendant must be aware of *all* of the State's evidence.

¶ 20    That Lucas's counsel viewed the video in chambers is beside the point. So too the dissent's assurance that Lucas was aware "the video existed." Lucas did not just need to know that the video existed; she needed to know the video's contents, for as we have said, the right to testify belongs exclusively to Lucas, not her lawyer. Sure, her counsel could provide a summary of the contents of the video. Yet in terms of Lucas's decision to testify or not, counsel's gloss on the evidence is no substitute for her own knowledge. Given these circumstances, we conclude Lucas's presence while the court viewed the video would have contributed to the fairness of the proceedings against her.

¶ 21    The violation of Lucas's right to be present had a cascading impact on fundamental rights. This amounted to second-prong plain error. See *People v. Herron*, 215 Ill. 2d 167, 187 (2005)

(reciting plain error standard). Thus, we find her due process right to be present during the presentation of evidence was violated.

¶ 22    Reversed and remanded.

¶ 23    PRESIDING JUSTICE LAVIN, dissenting:

¶ 24    I would deny defendant's petition for rehearing and affirm the judgment of the circuit court for the following reasons.

¶ 25    First, defendant waived her right to be present by her conduct and lack of objection. See *People v. Lindsey*, 201 Ill. 2d 45, 56 (2002); *People v. Volkman*, 235 Ill. App. 3d 888, 895 (1992) (stating a defendant who voluntarily absents herself from the trial or some stage thereof waives her right to be present during the critical stages of the proceeding). Here, the judge stated on the record that he and the lawyers would watch the video in his chambers outside defendant's presence based on courtroom technical deficiencies. Defense counsel verified that he had already explained the situation to defendant, and defendant responded, "yes." The fact that the judge and attorneys were watching the video in chambers only because they lacked the necessary equipment in the courtroom implied that they would otherwise be watching the video in the courtroom and in defendant's presence. This also implied defendant had a right to watch the video, herself, assuming she had not already seen it. Significantly, nowhere in defendant's brief does she claim she did not see the video before or after trial.

¶ 26    I find the cases defendant relies on distinguishable. In *People v. Mallet*, 30 Ill. 2d 136, 141-42 (1964), the defendant stepped out of the courtroom during a recess, but the trial resumed with testimony from a witness establishing the facts of the crime. Our supreme court held that, because the defendant was not fully advised as to that testimony, he could not waive being present for what

had been heard in his absence. Similarly, in *People v. Collins*, 184 Ill. App. 3d 321, 334-36 (1989), the defendant was excused from the courtroom during his motion to suppress after the trial court erroneously relayed that only legal arguments remained. In fact, a detective was cross-examined about important evidence on the defendant's case outside his presence. The Collins court held that no waiver occurred because the defendant was not informed of the testimony that was provided even though his defense counsel remained in the courtroom. The defendant was denied an opportunity to meet the witness face-to-face and sift the testimony.

¶ 27 By contrast, in this case, defendant was aware of the evidence against her. She was fully informed that the video existed. She in fact had made the star cameo appearance in the video, and Officer Clancy testified that the video was a true and accurate depiction of what occurred, *i.e.*, what he testified to. As *Mallett* states, "[w]aiver assumes knowledge" and can only occur when the defendant is "fully advised as to the testimony *** heard in his absence." *Mallett*, 30 Ill. 2d at 142. Defendant was so advised. Defendant thus voluntarily absented herself from the video viewing without objection, committing waiver of her due process claim. See *People v. Martine*, 106 Ill. 2d 429, 438-39 (1985) (determining that defendant waived her right to be present during an offer of proof in a voluntary, knowing, and intelligent manner when defendant departed from the courtroom without objection with a "complete understanding of what was happening"). A defendant cannot complain of an error that she induced the court to make or to which she consented. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). Viewing defendant's conduct as an "affirmative acquiescence" to the actions taken by the trial court, plain error does not even apply. See *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 12.

¶ 28    Even absent waiver and assuming plain error could apply, defendant still has not established any error, let alone second-prong plain error. See *People v. Alvidrez*, 2014 IL App (1st) 121740, ¶ 25. Defendant has not adequately identified how her physical absence from the video viewing contributed to unfairness in the proceedings or caused her to be denied an underlying constitutional right. See *Lindsey*, 201 Ill. 2d at 58. Defendant does not argue the video was improperly admitted into evidence. Defendant has not identified how the video significantly differed from Officer Clancy's testimony of the main events or that she was unaware of what it contained. The record further offers that the parties who were present in the chambers watched the video in silence. This is not the equivalent of when a witness testifies against a defendant in the defendant's absence. *Cf. Mallett*, 30 Ill. 2d at 141-42. Thus, defendant has not persuaded me that her absence specifically impaired her right to confront witnesses or present a defense or rendered her trial unfair. A defendant is not denied a constitutional right every time she is not present during trial, but only when it results in the denial of a constitutional right; it is only in that case that plain error has been committed. *Lindsey*, 201 Ill. 2d at 57.

¶ 29    Although what occurred in this case is best not repeated, defendant has not persuaded me that a fair and just trial was thwarted by her absence, even though she maintains the burden to do so for plain error. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). For all of these reasons, defendant's claim fails.