NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190037-U

NO. 4-19-0037

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 20, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cumberland County |
| SAMUEL L. BEARD, | ) | No. 17CF102 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jonathan T. Braden, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, concluding (1) any prolonging of the traffic stop was lawful as it was supported by reasonable suspicion and (2) the trial court's private viewing of audio and video recordings of the traffic stop did not violate defendant's constitutional right to be present at all critical stages of the proceedings.

¶ 2   Following a stipulated bench trial, defendant, Samuel L. Beard, was found guilty of possession with intent to deliver cannabis and sentenced to 30 months' probation. Defendant appeals, arguing the trial court (1) erroneously denied his pretrial motion to suppress where the physical evidence he sought to suppress was discovered following an unlawfully prolonged traffic stop and (2) violated his constitutional right to be present at all critical stages of the proceedings by conducting a private viewing of audio and video recordings of the traffic stop. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                      A. Information

¶ 5            In October 2017, the State charged defendant by information with possession with intent to deliver cannabis (between 30 and 500 grams) (720 ILCS 550/5(d) (West 2016)). The charge stemmed from a traffic stop occurring earlier that same month.

¶ 6                                    B. Pretrial Conference

¶ 7            In March 2018, the trial court held a pretrial conference, where defendant appeared with counsel. Defense counsel informed the court he and defendant had watched "the video in this case" and, based on "the contents of that video," defendant wanted him to file a motion to suppress.

¶ 8                                    C. Motion to Suppress

¶ 9            In April 2018, defendant filed a motion seeking to suppress all physical evidence discovered during a search of his vehicle. Defendant asserted suppression was warranted as the search occurred only after his traffic stop was unlawfully prolonged to allow a canine unit to arrive at the scene and conduct an open air sniff. Defendant contended "the video and audio available in this case" demonstrated the police officer who conducted the traffic stop was stalling to allow the police officer with the canine to arrive at the scene.

¶ 10                           D. Hearing on the Motion to Suppress

¶ 11           In May 2018, the trial court conducted a two-day hearing on defendant's motion to suppress. Defendant presented testimony from two witnesses, Andy Schabbing, the Chief of Police with the City of Neoga, and Daniel Hanley, the Chief of Police with the Village of Toledo. At the commencement of the first day of the hearing, defense counsel stated he wanted to make sure the court had "had a chance to watch the video." The court revealed it had not. The parties stipulated to the entry of a DVD containing audio and video recordings of the traffic stop for the court to review. Upon the suggestion of defense counsel, the court viewed the recordings in chambers

outside the presence of defendant. The following is gleaned from the evidence presented as is relevant to the issues presented in this appeal.

¶ 12 At the time of his testimony, Chief Schabbing had been a police officer for 10 years. In addition to completing 480 hours of training to become a police officer, he completed over 300 hours of continuing education. Chief Schabbing had taken classes related to drug transactions, such as criminal drug patrol, advanced roadside, and impaired driving recognition.

¶ 13 On October 19, 2017, Chief Schabbing was on patrol in Neoga. Shortly after school ended, around 3:50 p.m., Chief Schabbing noticed two vehicles, a sedan and a truck, parked in an alley behind a church. Two individuals were standing outside on each side of the sedan by the front windows, and the truck had its front doors ajar. Chief Schabbing approached in his patrol vehicle, at which time the two individuals standing outside looked at him and appeared "pretty startled." Chief Schabbing recognized one of the individuals as a juvenile whose mother had reported the month prior her concern the juvenile was using marijuana. After seeing Chief Schabbing, the two individuals proceeded towards and then entered the truck. At that point, "everybody took off." The vehicles "departed." Chief Schabbing testified, "most people, if they are just sitting there talking to each other in an alley and a cop pulls up, they'll look at you and look away. They are not going to scatter as soon as they see a police officer and both go opposite directions." Based on his training and experience, Chief Schabbing believed a drug transaction may have occurred.

¶ 14 Chief Schabbing followed the sedan. While doing so, he ran the information on its license plate, which indicated the vehicle was registered to defendant's father, and observed the driver of the sedan to be a young male, who he determined to be defendant. Chief Schabbing indicated he received information from a student during a sporting event that occurred

approximately a month or two prior indicating defendant was selling drugs to high school students after school and off of school property. Chief Schabbing could not recall who the student was who provided the information nor the exact time or place where he received the information. He did not document the information he received.

¶ 15    After about five minutes of following the sedan, Chief Schabbing observed the vehicle exceed the speed limit and cross the center line. Chief Schabbing decided to initiate a traffic stop. In deciding to do so, Chief Schabbing also had the "suspicious activity" which he observed in mind.

¶ 16    Before exiting his patrol vehicle, Chief Schabbing observed defendant and a passenger in defendant's vehicle "reaching around, like bending over." Chief Schabbing testified "it appeared they were messing with something." This activity continued while Chief Schabbing approached the sedan on foot. Chief Schabbing did not believe someone would have "to go all the way below the seat line" if they were "just reaching in the glove box."

¶ 17    Chief Schabbing made contact with defendant. After Chief Schabbing explained the purpose of the stop to defendant, defendant's passenger interjected and explained defendant's speedometer was not working. Defendant then expanded on the explanation provided by his passenger. Chief Schabbing testified both individuals "seemed more nervous than most kids their age during a traffic stop." He also testified the passenger's attempt to help defendant answer his questions was unusual. After receiving an expired insurance card from defendant, Chief Schabbing returned to his patrol vehicle.

¶ 18    Chief Schabbing testified he returned to his patrol vehicle "[t]o begin writing my written warnings and also to contact [Chief] Hanley." The video from the traffic stop does not show Chief Schabbing's activity while he was inside his patrol vehicle. Moments after returning

to his patrol vehicle, Chief Schabbing contacted Chief Hanley to bring his canine for an open air sniff. The conversation lasted approximately 90 seconds.

¶ 19        At one point prior to completing the written warnings, Chief Schabbing returned to defendant's vehicle to see if defendant had received a photograph of a valid insurance card which defendant requested from his father. Defendant indicated he had not. Chief Schabbing then returned to his vehicle and called defendant's insurance company to determine whether the vehicle was insured. The call lasted a few minutes, and the insurance company indicated the vehicle was insured.

¶ 20        Approximately 20 minutes after Chief Schabbing first spoke with defendant, Chief Hanley arrived at the scene with his canine. Chief Hanley immediately went to speak with defendant and then had his canine conduct an open air sniff, which lasted approximately two minutes. The canine alerted on the vehicle.

¶ 21        Chief Schabbing testified he finished writing the second warning shortly after Chief Hanley arrived and stayed in his patrol vehicle until the open air sniff was completed. When asked if he could have provided the warnings to defendant prior to the open air sniff, Chief Schabbing testified, "Yes, I probably could have." Chief Schabbing testified he did not delay the traffic stop to allow time for Chief Hanley to arrive.

¶ 22        Chief Schabbing testified he concluded he had reasonable suspicion to believe something illegal was inside defendant's vehicle. Chief Schabbing indicated he reached that conclusion based on the apparent drug transaction in the alley, the information he received about defendant, the furtive movements of defendant and defendant's passenger, and the nervousness of defendant and defendant's passenger.

¶ 23        Based on these facts, the defense argued any evidence obtained during the search

of defendant's vehicle should be suppressed as the traffic stop was unlawfully prolonged to allow Chief Hanley to arrive with his canine. The State disagreed, contending the traffic stop was not prolonged or, in the alternative, Chief Schabbing had reasonable suspicion to prolong the stop.

¶ 24 After taking the matter under advisement, the trial court issued a written order denying defendant's motion to suppress. The court initially considered whether the traffic stop was extended beyond the time necessary to complete the purpose of the stop. The court found the stop was prolonged by the call to arrange for an open air sniff. In addition, the court noted the "air sniff was conducted after Chief Schabbing had concluded the basis for his stop." The court next considered whether Chief Schabbing had reasonable suspicion to prolong the stop. The court initially evaluated the State's arguments suggesting the flight from the alley, the information about defendant selling drugs, or the combined furtive movements and nervousness could not independently establish reasonable suspicion. However, the court evaluated reasonable suspicion based on the "totality of the circumstances." Under the totality of the circumstances presented, the court found Chief Schabbing had reasonable suspicion to prolong the stop.

¶ 25 E. Stipulated Bench Trial and Sentencing

¶ 26 In October 2018, the trial court held a stipulated bench trial. The State provided a recitation of the parties' stipulated facts. We note the stipulated facts did not reference the audio and video recordings of the traffic stop. Based on the stipulated facts, the court found defendant guilty as charged.

¶ 27 F. Sentencing and Posttrial Motion

¶ 28 In December 2018, the trial court sentenced defendant to 30 months' probation with certain terms and conditions. That same month, defendant filed a posttrial motion, arguing the court erred in denying his motion to suppress.

¶ 29                    G. Hearing on Defendant's Posttrial Motion

¶ 30        In January 2019, the trial court held a hearing on defendant's posttrial motion. Defendant stood on his posttrial motion, and the State relied on its arguments made at the hearing on the motion to suppress. The court reaffirmed its conclusion that, "based on the totality of the circumstances," Chief Schabbing had reasonable suspicion to prolong the stop.

¶ 31        This appeal followed.

¶ 32                               II. ANALYSIS

¶ 33        On appeal, defendant argues the trial court (1) erroneously denied his motion to suppress where the physical evidence he sought to suppress was discovered following an unlawfully prolonged traffic stop and (2) violated his constitutional right to be present at all critical stages of the proceedings by conducting a private viewing of the audio and video recordings of the traffic stop.

¶ 34                A. The Denial of Defendant's Motion to Suppress

¶ 35        Defendant argues the trial court erroneously denied his motion to suppress where the physical evidence he sought to suppress was discovered following an unlawfully prolonged traffic stop. The State disagrees, maintaining the traffic stop was not prolonged or, in the alternative, Chief Schabbing had reasonable suspicion to prolong the stop.

¶ 36        When reviewing a ruling on a motion to suppress, we are presented with mixed questions of fact and law. *People v. Manzo*, 2018 IL 122761, ¶ 25, 129 N.E.3d 1141. We will give deference to a trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *Id.* Where the factual findings are accepted, we will conduct a *de novo* review of whether suppression is warranted under those facts. *Id.*

¶ 37        It is undisputed Chief Schabbing had probable cause to initiate a traffic stop. It is also undisputed Chief Schabbing had probable cause to conduct a search of defendant's vehicle after the canine alerted on the vehicle. The dispute instead centers around whether the traffic stop was prolonged by Chief Schabbing calling for the canine unit and whether any prolonged stop was supported by reasonable suspicion. Defendant asserts the calling of the canine unit prolonged the traffic stop and the prolonged stop was not supported by reasonable suspicion. The State asserts the calling of the canine unit did not prolong the traffic stop but, even if it did, the prolonged stop was supported by reasonable suspicion.

¶ 38        A traffic stop that is lawful at its inception may become unlawful if it is unduly prolonged. *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop [citation] and attend to related safety concerns." *Id.* at 354. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 349. Inquiries unrelated to the mission of the traffic stop do not convert the initial encounter into something other than a lawful seizure, so long as they " 'do not measurably extend the duration of the stop.' " *Id.* at 355 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

¶ 39        Where a traffic stop is prolonged beyond its mission, additional fourth amendment justification is necessary for the prolonged stop to be lawful. A prolonged stop to perform a brief investigation into detecting evidence of ordinary criminal wrongdoing will be deemed lawful where it is supported by a reasonable suspicion of criminal activity. *Id.* The determination of whether an officer has reasonable suspicion requires a consideration of "the totality of the circumstances—the whole picture." (Internal quotation marks omitted.) *People v. Timmsen*, 2016

- 8 -

IL 118181, ¶ 9, 50 N.E.3d 1092. "Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). In evaluating the officer's conduct, "we apply an objective standard and consider, 'would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?' " *Id.* (quoting *Terry*, 392 U.S. at 21-22).

¶ 40         Even assuming, *arguendo*, the traffic stop was prolonged beyond its mission by the call for a canine unit, we find Chief Schabbing had reasonable suspicion to prolong the stop. Chief Schabbing observed two vehicles parked in an alley behind a church after school hours. The sedan he observed had two individuals standing outside it next to the front windows. One of the individuals was a minor whose mother recently reported her concern the minor may have been using marijuana. The truck behind the sedan had its doors ajar. Upon seeing Chief Schabbing approaching, the two individuals standing outside appeared startled and proceeded towards the truck. Both vehicles then promptly left. Chief Schabbing testified, based on his training and experience, he believed a drug transaction may have occurred. Chief Schabbing pursued the sedan. After determining the driver of the sedan was defendant, Chief Schabbing recalled information he received from a student indicating defendant was dealing drugs to high school students after school hours and off school property. This information provided support for his belief that a drug transaction may have occurred in the alley. Upon initiating a traffic stop and while approaching defendant's vehicle on foot, Chief Schabbing observed both defendant and his passenger making furtive movements inside the vehicle. Chief Schabbing also believed defendant and his passenger appeared overly nervous during his interaction with them. The furtive movements and nervousness

garnered additional support for his belief that a drug transaction may have occurred in the alley. Based on the totality of the circumstances presented, we agree with the trial court—Chief Schabbing had reasonable suspicion to prolong the traffic stop. Accordingly, any prolonging of the traffic stop was lawful and the denial of defendant's motion to suppress was proper.

¶ 41                    B. The Private Viewing of the Audio and Video Recording

¶ 42          Defendant argues the trial court violated his constitutional right to be present at all critical stages of the proceedings by conducting a private viewing of the audio and video recordings of the traffic stop. The State disagrees, contending defendant did not have the constitutional right to be present at the private viewing of the recordings for purposes of the hearing on his motion to suppress.

¶ 43          "[B]oth the federal constitution and our state constitution afford criminal defendants the general right to be present, not only at trial, but at all critical stages of the proceedings, from arraignment to sentencing." *People v. Lindsey*, 201 Ill. 2d 45, 55, 772 N.E.2d 1268, 1275 (2002). The right to be present at all critical stages of the proceedings is not, however, absolute. *Id.* at 56. "Rather, a defendant's absence from such a proceeding will violate his constitutional rights only if the record demonstrates that defendant's absence caused the proceeding to be unfair or if his absence resulted in a denial of an underlying substantial right." *Id.* at 57.

¶ 44          It is undisputed the hearing on defendant's motion to suppress was a critical stage of the proceedings. The record makes clear defendant was present with counsel throughout that hearing. Defendant contends the trial court's private viewing of the audio and video recordings of the traffic stop for purposes of that hearing was a critical stage of the proceedings at which he had the right to be present. Defendant further contends his absence from that critical stage violated his

constitutional rights as it impaired his right to a public trial, his right to confront the evidence against him, and his right to decide whether to testify based on his own informed assessment of the strength of the evidence.

¶ 45 Even assuming, *arguendo*, the private viewing of the audio and video recordings of the traffic stop for purposes of the hearing on defendant's motion to suppress was a "critical stage" of the proceedings, we are unconvinced defendant's absence from the proceeding violated his constitutional right to be present. The record demonstrates defendant introduced the recordings in support of his own motion to suppress after he and his counsel reviewed them together. See *People v. Brooks*, 2017 IL 121413, ¶ 22, 104 N.E.3d 417 ("When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion."). The court's private viewing of the recordings which defendant introduced during a hearing on his motion to suppress did not impair defendant's right to a public trial, the right to confront evidence against him, or the right to testify. The recordings were not even offered as evidence against defendant at his stipulated bench trial. Based on this record, we are unconvinced the trial court's private viewing of the recordings for purposes of the hearing on defendant's motion to suppress caused the proceeding to be unfair or resulted in a denial of an underlying substantial right. Accordingly, the trial court's private viewing of the recordings did not violate defendant's constitutional right to be present.

¶ 46 In reaching this decision, we found defendant's reliance on *People v. Lucas*, 2019 IL App (1st) 160501, ¶ 2, 141 N.E.3d 341, unpersuasive. In *Lucas*, the State moved to publish an audio and video recording of the defendant's traffic stop during defendant's bench trial, which the trial court granted and then viewed in chambers outside the presence of defendant. *Id.* ¶¶ 5-6. The court then relied on the recording in determining the defendant's guilt. *Id.* ¶ 7. On appeal, the appellate court determined the defendant's absence from the viewing of the recording during her

bench trial violated her constitutional rights as it (1) caused the proceedings to be unfair as she was unable to view the evidence against her and aid in her own defense and (2) impacted "at least one fundamental right—to testify in her own defense." *Id.* ¶¶ 14-15, 19. With respect to the latter, the court relied on the principle that defendants, as a matter of routine practice during trials, "do not make their decisions about whether they wish to testify until after the State has presented its evidence and rested." *Id.* As indicated above, the concerns set forth in *Lucas* are not present where a trial court conducts a private viewing of a recording which the defendant introduced during a hearing on the defendant's motion to suppress.

¶ 47                                    III. CONCLUSION

¶ 48            We affirm the trial court's judgment.

¶ 49            Affirmed.